[No. C020089. Third Dist. Jan. 23, 1996.]

VALLEY CREST LANDSCAPE, INC., Plaintiff and Appellant, v.
CITY COUNCIL OF THE CITY OF DAVIS et al., Defendants and
Respondents;
NORTH BAY CONSTRUCTION, INC., Real Party in Interest and
Respondent.

**COUNSEL**

The Diepenbrock Law Firm, Paul F. Dauer and Eileen M. Diepenbrock for Plaintiff and Appellant.

McDonough, Holland & Allen, Robert W. O'Connor and Linda R. Beck for Defendants and Respondents.

Senneff, Kelly, Kimelman & Beach and Julie Ann Kimelman for Real Party in Interest and Respondent.

**OPINION**

**MORRISON, J.**—North Bay Construction, Inc, was the successful low bidder on a park project for the City of Davis (the City). The bid request required the bidder perform at least 50 percent of the work itself and to set forth the percentage of work to be performed by each subcontractor. North Bay submitted a bid which indicated 83 percent of the work would be done by subcontractors. The second lowest bidder, Valley Crest Landscape, Inc., objected that North Bay's bid was nonresponsive. When the City called this point to North Bay's attention, North Bay responded the percentages were not correct and submitted new percentages totaling 44.65 percent. The City then awarded the contract to North Bay over the objection of Valley Crest.

Valley Crest appeals from denial of its petition for a writ of mandate to set aside the contract awarded to North Bay. Valley Crest contends the revisions to North Bay's bid violate the Subletting and Subcontracting Fair Practices Act (Pub. Contract Code, § 4100 et seq.). It further contends that by claiming error in its bid, North Bay was precluded from participating further in the bidding process. We conclude North Bay could not change its bid, the City could not award North Bay the contract, and the contract is void. Accordingly, we reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The City solicited bids for construction of a park in South Davis. The information to bidders stated in part: "The City Council reserves the right to reject any or all bids and to determine which proposal is, in its opinion, the lowest responsible bid of a responsible bidder, and that which it deems in the best interest of the City to accept. The City Council also reserves the right to waive any informalities not material to cost or performance in any Proposal or bid."

Section 8-1 of the specifications provided in part: "The Contractor's own organization shall perform Contract work amounting to not less than 50 percent of the original total Contract price, . . . Where an entire item is subcontracted, the value of work subcontracted will be based on the Contract item bid price. When a portion of any item is subcontracted, the value of work subcontracted will be based on the estimated percentage of the Contract bid item price, determined from information submitted by the Contractor, subject to approval by the Engineer."

The form for listing subcontractors had four columns. The first was for the subcontractor's name and address. The second was titled "Description of Work Subcontracted." The third asked if the subcontractor was a minority- or woman-owned business enterprise (MBE/WBE). In the last column the bidder listed the percentage of the contract bid item price.

The City received four bids, which were opened on July 20, 1994. North Bay had the lowest bid of $4,077,675; Valley Crest had the second lowest bid of $4,088,000. On North Bay's list of subcontractors the percentage of work to be subcontracted totaled 83 percent.

The day after the bids were opened, Valley Crest wrote a letter protesting North Bay's bid on the basis it was nonresponsive. Valley Crest noted two problems with North Bay's bid. First, in violation of the bid requirements, the listed percentage of subcontractor work was 83 percent. Second, Valley Crest claimed North Bay had not made a good faith effort to meet the 20 percent affirmative action goal. North Bay listed no MBE/WBE subcontractors, while Valley Crest had 29 percent MBE/WBE subcontractors. The protest added that permitting a postbid inquiry and " 'clarification' " would give North Bay an opportunity to consider whether it really wanted the work; this would give North Bay an unfair " 'two bites at the apple.' "

On July 26, Patrick Fitzsimmons, the City's engineer, called and faxed a letter to North Bay concerning the 83 percent figure for the subcontractor work. Fitzsimmons indicated "barring any other information from you," he would recommend that North Bay's bid be deemed nonresponsive and the contract be awarded to Valley Crest. North Bay responded the next day, stating: "The subcontractor percentages shown on our bid proposal are not correct." It explained it did not have the final subcontractor figures until just before the bid closing, so it used estimated totals which resulted in higher percentages for subcontractor work. It provided "actual correct subcontractor percentages" totaling 44.65 percent.

The same day, Fitzsimmons and the public works director recommended to the City that the project be awarded to North Bay. Their memorandum

explained North Bay was given a chance to explain the "irregularity" in its bid which showed 83 percent subcontractor participation. They had spot-checked North Bay's revised subcontractor percentages by contacting the five largest subcontractors and were satisfied 44.65 percent was the true number. The city attorney had reviewed the documents and her opinion was that the bid irregularity should be waived as the revised bid met the requirements, the subcontractor percentage listing was not a legal require-ment but merely requested by the City, and the bid irregularity did not give North Bay a competitive advantage over other bidders.

At the city council meeting on August 1, 1994, after hearing from the interested parties, the council voted to award the contract to North Bay.

Valley Crest then filed a petition for a writ of mandate, a writ of administrative mandamus, and for declaratory and injunctive relief. Valley Crest sought to have North Bay's contract declared void, and the City directed to award the contract to Valley Crest and to enforce the Subletting and Subcontracting Fair Practices Act against North Bay.

The court found Valley Crest's petition was for a writ of mandate under Code of Civil Procedure section 1085. It limited its review to whether the actions of the City were arbitrary and capricious, lacking in evidentiary support, failed to follow proper procedures, or failed to give required notices. It denied the petition.

## DISCUSSION

On appeal, Valley Crest does not challenge the trial court's conclu-sion that its writ petition sought traditional mandamus under Code of Civil Procedure section 1085. (See *Taylor Bus Service, Inc.* v. *San Diego Bd. of Education* (1987) 195 Cal.App.3d 1331, 1339 [241 Cal.Rptr. 379].) The parties agree the proper standard of review is the substantial evidence test, but they disagree as to its scope and application. We find the most pertinent rule of appellate review in this case is that the review of the interpretation of statutes is de novo. (*Jefferson* v. *Compton Unified School Dist.* (1993) 14 Cal.App.4th 32, 37-38 [17 Cal.Rptr.2d 474].)

The facts are undisputed that North Bay's original bid showed subcontrac-tor percentages totaling 83 percent, while the specifications permitted only 50 percent. Upon inquiry, North Bay responded the percentages were "not correct" and submitted new percentages totaling 44.65 percent. What the parties dispute is the legal effect of this action. Valley Crest contends North Bay was improperly permitted to change its bid. The City and North Bay

view the change as simply a waiver of an immaterial irregularity. Which characterization is correct determines whether the City's action in awarding the contract to North Bay and the trial court's ruling denying the petition for a writ were correct. As we explain, we agree with Valley Crest's characterization.

 Generally, cities, as well as other public entities, are required to put significant contracts out for competitive bidding and to award the contract to the lowest responsible bidder. (See, e.g., Pub. Contract Code, § 20162.) A bidder is responsible if it can perform the contract as promised. (*Taylor Bus Service, Inc.* v. *San Diego Bd. of Education, supra,* 195 Cal.App.3d at p. 1341.) A bid is responsive if it promises to do what the bidding instructions require. (*Ibid.*) Usually, whether a bid is responsive can be determined from the face of the bid without outside investigation or information. (*Id.* at p. 1342.)

In enacting the Subletting and Subcontracting Fair Practices Act (the Act), the Legislature found the practices of bid shopping and bid peddling resulted in poor quality of materials and workmanship, deprived the public of the benefits of fair competition, and led to insolvencies, loss of wages, and other evils. (Pub. Contract Code, § 4101.) Bid shopping occurs where the general contractor uses the lowest bid received to pressure other subcontractors to submit even lower bids. (*Bay Cities Paving & Grading, Inc.* v. *Hensel Phelps Constr. Co.* (1976) 56 Cal.App.3d 361, 365 [128 Cal.Rptr. 632].) The Act requires bidders for public contracts to list the names of all subcontractors who will perform work in an amount in excess of one-half of 1 percent of the prime contractor's bid. (Pub. Contract Code, § 4104, subd. (a).) The bidder must also set forth: "The portion of the work which will be done by each subcontractor under this act. The prime contractor shall list only one subcontractor for each portion as is defined by the prime contractor in his or her bid." (Pub. Contract Code, § 4104, subd. (b).)

Once a subcontractor has been designated, the prime contractor cannot substitute another subcontractor unless the awarding authority consents and one of certain situations exists. (Pub. Contract Code, § 4107, subd. (a).) One of the permissible situations is where the prime contractor establishes the subcontractor "was listed as the result of an inadvertent clerical error." (Subd. (a)(5).) In such cases, the prime contractor must give written notice of the error within two days of the opening of the bid. (Pub. Contract Code, § 4107.5.)

 Valley Crest contends North Bay's change of the subcontractor percentages violated the Act. It argues the designation of the "portion" of

work to be done by the subcontractor must include a percentage to be meaningful. Valley Crest further argues the Act permits only the name of the subcontractor to be changed, and then only if notice of the error is given in two days. The City and North Bay contend the Act does not require the percentage of the subcontractor's work; that requirement was imposed by the City to ensure compliance with the City's requirement that the prime contractor perform at least 50 percent of the contract. We agree with the City and North Bay.

Neither side cites definitive authority for its position. Valley Crest argues that since the threshold requirement for listing subcontractors is stated as a percentage (one-half of 1 percent of the prime contract), the statute intends the "portion" to also be listed as a percentage. This argument proves too much. If the Legislature intended "portion" to mean percentage, it could have simply used the term "percentage" instead. By using the different term "portion," the reasonable inference is the Legislature intended a different meaning than percentage. (*People* v. *Jones* (1988) 46 Cal.3d 585, 596 [250 Cal.Rptr. 635, 758 P.2d 1165]; *Campbell* v. *Zolin* (1995) 33 Cal.App.4th 489, 497 [39 Cal.Rptr.2d 348].)

The City cites several cases in which the facts indicate the portion of the subcontractor's work is designated by the type of work. For example, in *Interior Systems, Inc.* v. *Del E. Webb Corp.* (1981) 121 Cal.App.3d 312, 314 [175 Cal.Rptr. 301], the respondent listed the appellant as the subcontractor for finished carpentry, millwork and interior woodwork, and in *Bay Cities Paving & Grading, Inc.* v. *Hensel Phelps Constr. Co., supra,* 56 Cal.App.3d 361, 364, respondent listed both itself and appellant as the subcontractors responsible for the paving and excavation work. In none of these cases, however, was the meaning of "portion" raised. ■ A case is not authority for a proposition not considered therein. (*Aero-Crete, Inc.* v. *Superior Court* (1993) 21 Cal.App.4th 203, 212 [25 Cal.Rptr.2d 804]; *Johnson* v. *Bradley* (1992) 4 Cal.4th 389, 415 [14 Cal.Rptr.2d 470, 841 P.2d 990].)

■ "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law." (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) ■ "The central purpose of the Act is to protect both the public and subcontractors from the practices of bid shopping and bid peddling in connection with public works projects. [Citations.]" (*Cal-Air Conditioning, Inc.* v. *Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 668 [26 Cal.Rptr.2d 703].) The intent is to prevent a prime contractor from using a subcontractor's bid to prepare its bid, and then shopping that bid to get a

lower price. (Acret, Cal. Construction Contracts and Disputes (Cont.Ed.Bar 1990) § 4.8, p. 239.) That is accomplished by stating the portion of work the subcontractor is to perform and the type of work. If a certain subcontractor is listed, for example, as performing the masonry work, the public entity can determine that particular subcontractor is performing the masonry work, not another subcontractor that was pressured to perform at a lower cost.

 The Act permits the prime contractor to define the "portion" of work to be done by each subcontractor. (Pub. Contract Code, § 4104, subd. (b).) This provision supports the view that "portion" need not be stated as a percentage. The Act does not require the subcontractor's work to be stated as a percentage of the contract. We decline to add a requirement not found in the statute. We conclude the percentage requirement was included to show compliance with section 8-1 of the specifications and was independent of the requirements of the Act.

 Valley Crest contends that since North Bay admitted a mistake in its bid, that the subcontractor percentages were "incorrect," its only remedy was that provided in the relief of bidders statutes. Public Contract Code section 5101, subdivision (a) provides in part: "A bidder shall not be relieved of the bid unless by consent of the awarding authority nor shall any change be made in the bid because of mistake, but the bidder may bring an action against the public entity in a court of competent jurisdiction in the county in which the bids were opened for the recovery of the amount forfeited, without interest or costs." In order to recover its bid bond, the bidder must establish (1) a mistake was made; (2) the bidder gave written notice to the public entity within five days of the opening of the bid, specifying how the mistake was made; (3) the mistake made the bid materially different than intended; and (4) the mistake was made in filling out the bid, not in reading the plans or specifications or due to an error in judgment or in its inspection of the site. (Pub. Contract Code, § 5103.) A bidder who claims a mistake may not participate further in the bidding for the project. (Pub. Contract Code, § 5105.)

The City and North Bay respond these statutes are inapposite because North Bay did not seek relief from a mistake in its bid. They assert there was no mistake; instead, there was only an irregularity which the City could waive. " 'A basic rule of competitive bidding is that bids must conform to specifications, and that if a bid does not so conform, it may not be accepted. [Citations.] However, it is further well established that a bid which substantially conforms to a call for bids may, though it is not strictly responsive, be accepted *if the variance cannot have affected the amount of the*

*bid or given the bidder an advantage or benefit not allowed other bidders* or, in other words, if the variance is inconsequential. [Citations.]' " (*Konica Business Machines U.S.A., Inc.* v. *Regents of University of California* (1988) 206 Cal.App.3d 449, 454 [253 Cal.Rptr. 591], quoting 47 Ops.Cal.Atty.Gen. 129, 130-131 (1966), italics in *Konica*.)

Valley Crest contends the City could not waive the 50 percent requirement because it was an important part of the bid specifications and such waiver would give North Bay a competitive advantage. It contends that in changing the percentages, North Bay changed the percent of work to be done by subcontractors and diverted over $1.5 million of work to itself. The City and North Bay respond the 50 percent requirement is not waived; North Bay simply misstated the subcontractor percentages. In effect, the City waived the implied requirement to state the subcontractor percentages correctly in the bid, since it was convinced the error in stating them was an honest mistake. Valley Crest challenges the evidence relied upon to support this view of the change in the percentages.

We need not determine whether substantial evidence supports the finding that North Bay's misstatement was innocent and there was no change in the actual percentage of work to be done by subcontractors. Even if the change in percentages was made only to correct a clerical error, the doctrine that inconsequential irregularities may be waived does not permit this change in the subcontractor percentages.

In *Menefee* v. *County of Fresno* (1985) 163 Cal.App.3d 1175 [210 Cal.Rptr. 99], Brewer-Kalar, the lowest bidder, failed to sign the bid on the appropriate line. County counsel determined the bid was "non-responsive" and invalid, and advised the board of supervisors not to accept the bid. The board voted to accept the lowest bid and waive any irregularity due to the absent signature. The second lowest bidder, Menefee, filed a petition for a writ of mandate to compel the board to award the contract to it. The trial court denied the writ and the appellate court affirmed.

The reviewing court determined Brewer-Kalar's bid was valid despite the absence of the signature on the appropriate line, because the bid was signed elsewhere. (*Menefee* v. *County of Fresno, supra,* 163 Cal.App.3d at p. 1181.) The court based its decision on *Williams* v. *Bergin* (1900) 129 Cal. 461 [62 P. 59], in which an incomplete and unsigned bid was held invalid despite the submission of a signed bid bond. The *Menefee* court read *Williams* to explain that the real issue in determining the validity of a bid is whether the bidder would be liable on its bond if it attempted to back out after the bid was

accepted. (*Menefee, supra*, at pp. 1178-1179.) Waiver of an irregularity in a bid should only be allowed if it would not give that bidder an unfair advantage by allowing the bidder to withdraw its bid without forfeiting its bid bond. (*Id.* at pp. 1180-1181.) "Thus, we should ask—what would have happened if Brewer-Kalar had refused to enter into a contract and sought to recover its bid bond? If they could use the absence of an executing signature on their bid to avoid a contract, then they had an unfair advantage—the opportunity to back out—not given to other bidders who signed their bids properly." (*Id.* at p. 1181.)

The *Menefee* court, *supra*, 163 Cal.App.3d at page 1181, found that under the statutes for relief of bidders, a bidder could be released only for typographical or arithmetical errors, not a mistaken submission of a bid. Since relief was not available, the irregularity could be waived and the bid was valid. (*Ibid.*)

Applying the same test here, we conclude North Bay had an unfair advantage because it could have withdrawn its bid. Misstating the correct percentage of work to be done by a subcontractor is in the nature of a typographical or arithmetical error. It makes the bid materially different and is a mistake in filling out the bid. As such, under Public Contract Code section 5103, North Bay could have sought relief by giving the City notice of the mistake within five days of the opening of the bid.[1] That North Bay did not seek such relief is of no moment. The key point is that such relief was available. Thus, North Bay had a benefit not available to the other bidders; it could have backed out. Its mistake, therefore, could not be corrected by waiving an "irregularity."

The City contends the type of mistakes which gives rise to relief under Public Contract Code section 5103 are only mistakes that directly affect the bid price. As authority, it cites cases in which the mistake was one in the bid price. Again, these cases are not authority for a proposition not considered. (*Aero-Crete, Inc.* v. *Superior Court, supra*, 21 Cal.App.4th 203, 212.) The language of the statute does not support this narrow interpretation. Section 5103 does not provide the mistake must be in the price, only that it makes the bid materially different than intended and be a mistake in filling out the bid. (Pub. Contract Code, § 5103, subds. (c) and (d).) As this case shows, there can be factors other than price which are material to the bid. Here the requirement that the prime contractor perform at least 50 percent of the work was such a factor.

---

[1]Moreover, apart from the relief afforded by section 5103 of the Public Contract Code, the City gave North Bay the opportunity to withdraw its bid. The City's letter to North Bay stated the bid would be considered nonresponsive unless North Bay provided additional information.

North Bay argues that it has substantially performed the contract and great harm will result if the contract is declared invalid. It asks this court to "exercise its equitable powers in reviewing the positions of the various parties." North Bay provides no citation to authority for this vague request and it is premised upon facts outside the record; therefore, we decline to consider it. (*Atchley* v. *City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72].)

We conclude that changing the subcontractor's percentages in North Bay's bid did not constitute a violation of the Act. The subcontractor percentages were not required by the Act, but simply to ensure compliance with section 8-1 of the bid specifications. This specification made listing the subcontractor percentages a material element of the bid. Since it was a material element of the bid, North Bay could not change its bid to correct the mistake in stating the percentages. North Bay's bid provided for more than 50 percent of the work to be done by subcontractors; therefore, it was nonresponsive to section 8-1 of the specifications. The City could not permit the mistake as to this material element of the bid to be corrected by purporting to "waive an irregularity." Since North Bay's bid was nonresponsive, its contract is invalid.[2]

The judgment is reversed. The matter is remanded for corrective orders in conformity with the views expressed herein.

Appellant shall recover costs of appeal.

Puglia P. J., and Sims, J., concurred.

Petitions for a rehearing were denied February 21, 1996, and the opinion was modified to read as printed above.

---

[2]North Bay's right to recover in quasi-contract or on some other theory for the reasonable value of labor and materials is not before us and we express no opinion on that question. (See *Miller* v. *McKinnon* (1942) 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570]; *Reams* v. *Cooley* (1915) 171 Cal. 150 [152 P. 293]; *Zottman* v. *San Francisco* (1862) 20 Cal. 96; *Greer* v. *Hitchcock* (1969) 271 Cal.App.2d 334 [76 Cal.Rptr. 376]; and *Gamewell F. A. T. Co.* v. *Los Angeles* (1919) 45 Cal.App. 149 [187 P. 163].) Nor, by characterizing the contract as "void" or "invalid" do we imply any such opinion.