EDMUND G. BROWN JR. Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE NOREEN EVANS, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:
1. May the California State University employ selection criteria to limit the number of qualified prospective contractors invited to submit bid proposals for a "design-build" project?
2. Is the California State University required to inform qualified prospective contractors what selection criteria will be employed to limit the number of contractors invited to submit bid proposals for a "design-build" project, including how the selection criteria will be weighted and evaluated?
3. To what extent, if any, do the requirements of the Subletting and Subcontracting Fair Practices Act apply to "design-build" projects? *Page 2 
 CONCLUSIONS
1. The California State University may employ selection criteria to limit the number of qualified prospective contractors invited to submit bid proposals for a "design-build" project.
2. The California State University is required to inform qualified prospective contractors what selection criteria will be employed to limit the number of contractors invited to submit bid proposals for a "design-build" project, including how the selection criteria will be weighted and evaluated.
3. The requirements of the Subletting and Subcontracting Fair Practices Act apply to "design-build" projects once the subcontractors are listed by the contractor.
 ANALYSIS
The Legislature has enacted the California State University Contract Law (Pub. Contract Code, §§ 10700-10874; "Act")[1] to provide procedures for the letting of contracts by the Trustees of the California State University ("CSU"). (See Ed. Code, § 66600;California State Employees Assn. v. Trustees of Cal. State Colleges
(1965) 237 Cal.App.2d 541, 544.)[2] The Act is similar to the State Contract Act (§§ 10100-10285.5) and generally requires the use of competitive bidding (§ 10722)[3] for construction projects undertaken by CSU (§ 10704; Ed. Code, § 66606). Section 10701, subdivision (a), defines a "project" as including "the erection, construction, alteration, painting, repair or improvement of any state *Page 3 
structure, building, road, or other state improvement of any kind." Projects with an estimated cost of $5,000 or less need not be competitively bid, and minor capital outlay projects estimated to cost less than $400,000 are not subject to some of the provisions of the Act. (§ 10705, subds. (a), (b).) Major capital outlay projects, with an estimated cost of more than $400,000, must comply with all of the requirements of the Act (see §§ 10108, 10705), and it is those projects with which we are concerned here.
The focus of our inquiry is upon section 10708, which sets special requirements for "design-build" projects.[4] Section 10708 states:
 "(a) When, in the opinion of the trustees, the best interests of the California State University dictate, the trustees may enter into an agreement with a contractor to provide all or significant portions of the design services and construction of a project under this chapter. The contractor shall design the project pursuant to the scope of services set forth in the request for proposals, build the project, and present the completed project to the trustees for their approval and acceptance.
 "(b) Work under this section shall be carried out by a contractor chosen by a competitive bidding process that employs selection criteria in addition to cost. Any design work performed pursuant to this section shall be prepared and signed by an architect certificated pursuant to Chapter 3 (commencing with Section 5500) of Division 3 of the Business and Professions Code.
 "(c) When the design of portions of the project permits the selection of subcontractors, the contractor shall competitively bid those portions. The contractor shall provide to the trustees a list of subcontractors whose work is in excess of one-half of 1 percent of the total project cost as soon as the subcontractors are identified. Once listed, the subcontractors shall have the rights provided in the Subletting and Subcontracting Fair Practices Act (Chapter 4 (commencing with Section 4100) of Part 1)."
 1. Limiting Prospective Contractors *Page 4 
The first question we are asked concerns whether the "selection criteria" specified in subdivision (b) of section 10708 may be used by CSU to limit the number of qualified prospective contractors who are given notice and invited to submit bids for a particular design-build project. Such criteria might relate to (1) organizational resources and the proximity of key personnel, (2) licensing requirements, (3) general design-build experience, (4) team experience with the type of project to be built, (5) special construction skills required for the project, (6) availability of key personnel and resources to manage the project, and (7) commercial and business references. May such selection criteria be applied by CSU before contractors are given an opportunity to submit their bid proposals? We conclude that such criteria may be so used before bid proposals are requested.
In analyzing the terms of section 10708, we rely upon well-settled principles of statutory construction. "When interpreting a statute, our primary task is to determine the Legislature's intent. [Citation.]" (Freedom Newspapers, Inc. v. Orange County Employees RetirementSystem (1993) 6 Cal.4th 821, 826.) "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (Dyna-Med, Inc. v. Fair Employment and HousingCom. (1987) 43 Cal.3d 1379, 1387.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (Ibid.) "When the language is susceptible of more than one reasonable interpretation, . . . we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (People v. Woodhead (1987) 43 Cal.3d 1002,1007-1008.) Finally, "a practical construction is preferred." (California Correctional Peace Officers Assn. v. State PersonnelBd. (1995) 10 Cal.4th 1133, 1147.)
Looking at the words of section 10708, we find that their meanings are clear. A "selection" occurs when one "selects"; to select is "to choose from a number or group usu[ally] by fitness, excellence or other distinguishing feature." (Webster's 3d New Internat. Dict. (2002) p. 2058.) A "criterion" is "a standard on which a decision or judgment may be based." (Id., at p. 538.) Thus, CSU may employ various standards in addition to cost, when choosing the contractor to whom it will award the design-build contract. We have carefully reviewed the legislative histories of section 10708 and its predessor statute (former Ed. Code, § 90108) and have found nothing indicating that the Legislature intended to circumscribe the timing of when to apply the selection criteria in letting design-build contracts. *Page 5 
Moreover, we view the Legislature's specification of "selection criteria" in section 10708 as granting flexibility to CSU in awarding design-build contracts. There is no requirement that the bidding process be conducted in a particular sequence or that all qualified bidders[5]
be allowed to participate at the bid proposal stage. Although one of the primary objectives of the Public Contract Code is "[t]o provide all qualified bidders with a fair opportunity to enter the bidding process" (§ 100, subd. (c)), entry into the process does not assure "final-stage" consideration in that process.
We thus conclude in answer to the first question that CSU may employ selection criteria to limit the number of qualified prospective contractors invited to submit bid proposals for a design-build project.
2. Disclosure of Selection Criteria
We are next asked whether CSU is required to inform qualified prospective contractors what selection criteria will be employed to limit the number of contractors invited to submit bid proposals, including how the selection criteria will be weighted and evaluated. We conclude that CSU is required to disclose such information.
Certainly it is in the interest of all concerned, including CSU, prospective bidders, and taxpayers, that a full and fair disclosure of all competitive bidding requirements be made known for a proposed design-build project. As noted above, subdivision (c) of section 100 declares that a "fair opportunity" is to be given qualified bidders to enter the bidding process. If the selection criteria is made known, including how the criteria will be weighted and evaluated, an informed decision may be made by prospective bidders whether to go forward in the process. Moreover, without providing such information, the process cannot be assured of producing "responsible bidders" able to demonstrate "the attribute of trustworthiness, as well as quality, fitness, capacity, and experience to satisfactorily perform the public works contract." (§ 1103.)
We thus conclude in answer to the second question that CSU is required to inform qualified prospective contractors what selection criteria will be employed to limit the *Page 6 
number of contractors invited to submit bid proposals for a design-build project, including how the selection criteria will be weighted and evaluated.
3. Design-Build Project Subcontractors
The Subletting and Subcontracting Fair Practices Act (§§ 4100-4114; "Subcontracting Act") is a comprehensive statutory scheme designed to prevent "the practices of bid shopping and bid peddling in connection with the construction, alteration, and repair of public improvements." (§ 4101; see 86 Ops.Cal.Atty.Gen. 90 (2003).) "Bid shopping is the use of the low bid already received by the general contractor to pressure other subcontractors into submitting even lower bids. Bid peddling, conversely, is an attempt by a subcontractor to undercut known bids already submitted to the general contractor in order to procure the job." (Southern Cal. Acoustics Co. v. C.V. Holder, Inc. (1969)71 Cal.2d 719, 726, fn. 7; see MCM Construction, Inc. v. City and County of SanFrancisco (1998) 66 Cal.App.4th 359, 368-369; E.F. Brady Co. v. M.H.Golden Co. (1997) 58 Cal.App.4th 182, 189-190; Valley Crest Landscape,Inc. v. City Council (1996) 41 Cal.App.4th 1432, 1438; Cal.-AirConditioning, Inc. v. Auburn Union School Dist. (1993)21 Cal.App.4th 655, 661, fn. 1.)
To prevent a prime contractor from using a subcontractor's bid to prepare its bid, and then shopping that bid to get a lower price, the Subcontracting Act requires bidders for public contracts to list the names of all subcontractors who will perform work in an amount in excess of one-half of 1 percent of the prime contractor's bid. (§ 4107, subd. (a).) It also requires bidders to specify the portion of the work that will be done by each subcontractor, with only one subcontractor listed for each portion. (§ 4104, subd. (b); see Valley Crest Landscape, Inc.v. City Council, supra, 41 Cal.App.4th at pp. 1439-1440.)
We are asked to what extent, if any, the provisions of the Subcontracting Act apply to design-build projects let for contract under the terms of 10708. We conclude that the requirements of the Subcontracting Act apply once the subcontractors are identified by the contractor.
The answer to this question is found in subdivision (c) of section 10708, quoted above. The statute requires the listing "of subcontractors whose work is in excess of one-half of 1 percent of the total project costs" who "shall have the rights provided in the Subletting and Subcontracting Fair Practices Act. . . ." Thus, when the design of portions of the project permits the selection of subcontractors: (1) the design-build contractor is required to competitively bid those portions; (2) the contractor must provide to CSU a list of those subcontractors whose work will be in excess of one-half of one percent of the total project cost as soon as the subcontractors are identified; and (3) once they have been listed, the subcontractors have the rights set forth in the Subcontracting Act. *Page 7 
Subdivision (c) was added to section 10708 in 2005. (Stats. 2005, ch. 318, § 13.) A legislative committee report concerning the proposed legislation (Assem. Com. on Higher Education, Rep. on Assem. Bill No. 961 (2005-2006 Reg. Sess.) as amended March 29, 2005, pp. 5-6) explained the purpose of the amendment as follows:
 "According to the CSU Chancellor's Office, `the Subletting and Subcontracting Fair Practices Act requires the prime contractor, when they submit a bid for the public work, to include with the bid a list of all subcontractors where work is in excess of one-half of one percent. However, in the design-build context of Public Contract Code (10708), where the prime contractor teams with an architect to both design and build public works, the design phase of the project has not yet concluded, thus making it impossible to bid the work to subcontractors at the time the prime contractor, the design-build team, submits its bid. This bill conforms the protections of the Subletting and Subcontracting Fair Practices Act to the design-build environment.'"
It is apparent from this legislative history that design-build projects let for contract pursuant to section 10708 must include protections for subcontractors as specified in the Subcontracting Act.
We conclude in answer to the third question that the requirements of the Subcontracting Act apply to design-build projects once the subcontractors are listed by the contractor.
[1] All further references to the Public Contract Code are by section number only.
[2] CSU is also subject to administrative provisions applicable to all public contracts. (See §§ 1100-9203.)
[3] As used in the Public Contract Code, "`bid' means any proposal submitted to a public entity in competitive bidding for the construction, alteration, repair, or improvement of any structure, building, road or other improvement of any kind." (§ 5100, subd. (b).) A "competitive bid" is a price at which one will perform work or supply goods and which is submitted in response to public notice of an intended purchase. (Black's Law Dict. (8th ed. 2004), p. 171, col. 2.) "Competitive bidding," as the term is used here, is the process of awarding a contract for a public works project to the lowest responsible bidder. (See City of Inglewood-Los Angeles County Civic Center Authorityv. Superior Court (1972) 7 Cal.3d 861, 866; Taylor Bus Service, Inc. v.San Diego Board of Education (1987) 195 Cal.App.3d 1331, 1341-1342.) "Responsible bidder" means "a bidder who has demonstrated the attribute of trustworthiness, as well as quality, fitness, capacity, and experience to satisfactorily perform the public works contract." (§ 1103.)
[4] In legislation similar to the Act, the Legislature has defined "design-build" as "a construction procurement process in which both the design and construction of a project are procured from a single entity." (Gov. Code, § 13332.19, subd. (a)(1); see Gov. Code, 14661, subd. (a).) This method of project delivery can be contrasted with the more traditional method, commonly termed "design-bid-build," under which the owner retains his or her own architects and engineers to design the project.
[5] Under section 10760, bidders become "qualified" after completing a questionnaire and providing a financial statement. The focus of this opinion is upon whether the selection criteria of section 10708 may be used thereafter by CSU to reduce the number of qualified bidders before bid proposals are solicited for a particular design-build project. *Page 1