Filed 12/14/15

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DESILVA GATES CONTRUCTION, LP, | |
| Plaintiff and Respondent, | C074521 |
| v. | (Super. Ct. No. 34201380001366CUWMGDS) |
| DEPARTMENT OF TRANSPORTATION et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Eugene L. Balonon, Judge. Affirmed.

Ronald W. Beals, Jeanne Scherer, Todd Van Santen, Erin E. Holbrook, for Department of Transportation; John F. Hodges for Papich Construction Company, Inc., Defendants and Appellants.

Archer Norris, W. Eric Blumhardt, Erin M. Gallagher; Smith & Brockhage, Randall M. Smith and Michael Willcoxon for Plaintiff and Respondent.

The California Department of Transportation (CalTrans) and Papich Construction Company, Inc. (Papich) appeal from the trial court's issuance of a writ of mandate to vacate the award of a public works contract to Papich. The trial court granted the writ on

1

grounds CalTrans erroneously rejected a bid by DeSilva Gates Construction LP (DeSilva) as nonresponsive, and erred by awarding the contract to Papich despite Papich's failure to comply with a material requirement of the information for bids. On appeal, CalTrans and Papich argue DeSilva's bid was nonresponsive because DeSilva impermissibly changed its list of subcontractors. Appellants also argue CalTrans had discretion to waive Papich's mistake in failing to acknowledge the addendum to the information for bids.

On our own motion, we requested that the parties address whether this case has become moot. Based on the parties' representations, we conclude this case remains justiciable.

DeSilva has elected not to file a respondent's brief. Nonetheless, we "examine the record on the basis of appellant's brief and . . . reverse only if prejudicial error is found. (*Baldwin v. Baldwin* (1944) 67 Cal.App.2d 175, 153; *Jarvis v. O'Brien* (1957) 147 Cal.App.2d 758.)" (*Walker v. Porter* (1974) 44 Cal.App.3d 174, 177.) In this case, we conclude the trial court did not err. DeSilva's disclosure of a subcontractor performing work amounting to only one-tenth of one percent of the total value of the contract was not required by the Public Contract Code[1] or CalTrans's information for bids. The additional information was accurate, albeit unnecessary, and did not render DeSilva's bid nonresponsive. By contrast, CalTrans initially declared Papich's bid to be nonresponsive and then waived Papich's mistake and determined the bid to be responsive. We conclude CalTrans abused its discretion by awarding Papich the contract. Accordingly, we affirm the trial court's issuance of the writ of mandate.

---

[1]     Undesignated statutory references are to the Public Contract Code.

# FACTUAL AND PROCEDURAL HISTORY

## *CalTrans's Information for Bids*

In July 2012, CalTrans issued an information for bids on a construction project estimated to cost $34 million to widen a section of Highway 99 in Tulare County.  The invitation for bids contained a section regarding disclosure of subcontractors that instructed bidders as follows:

"2-1.12C  Subcontractor List  [¶]  In the Subcontractor List, list each contractor to perform work in an amount in excess of ½ of 1 percent of the total bid or $10,000, whichever is greater (. . . § 4100 et seq.)  [¶]  The Subcontractor List must show the name, address, and work portions to be performed by each subcontractor listed.  Show work portion by bid item number, description, and percentage of each bid item subcontracted.  [¶]  On the Subcontractor List you may either submit each subcontracted bid item number and corresponding percentage with your bid *or fax these numbers and percentages to (916) 227-6282 within 24 hours after bid opening*.  Failure to do so results in a nonresponsive bid."  (Italics added.)

On September 7, 2012, CalTrans issued an addendum to the information for bids.  Specifically, the addendum indicated that (1) bids would be opened on September 14, 2012 instead of September 11, 2012, (2) project plan sheets 142, 143, 145, and 146 were revised, and (3) items 59, 60, and 77 in the bid book's "Bid Item List" were revised as well.  The addendum concluded by advising potential bidders to:  "Submit bids for this work with the understanding and full consideration of this addendum.  The revisions declared in this addendum are an essential part of the contract."

## *The Submitted Bids*

CalTrans received and opened nine bids on September 14, 2012.  Security Paving Company, Inc. (Security) submitted the lowest bid for $30,584,331.  DeSilva submitted

3

the second-lowest bid by offering to perform the work for $31,677,677. DeSilva's bid included the names and description of work by all subcontractors slated to perform work exceeding one-half of one percent of the bid amount. The same day, DeSilva faxed to CalTrans additional information within 24 hours of bid opening (24-hour subcontract list). DeSilva's 24-hour subcontractor list included All Steel Fence, a subcontractor not listed in DeSilva's bid. All Steel Fence was listed as performing "fences, gates, railing" work -- work that constituted all of bid item numbers 139 and 140 as well as one percent of bid item number 143. Cumulatively, All Steel Fence was estimated to perform $15,023 worth of work. Papich submitted the third-lowest bid, proposing to perform the work for $32,611,185. Papich's bid did not acknowledge or accept the addendum to the information for bids.

***CalTrans's Assessment of the Bids***

CalTrans determined Security's bid to be nonresponsive for revision of its subcontractor list after a protest by DeSilva on September 25, 2012. On September 25, 2012, DeSilva became the apparent low bidder.

On September 26, 2012, CalTrans sent a letter to Papich noting the company "failed to acknowledge Addendum #1 dated September 7, 2012, . . . on the signature page . . . of its bid proposal. [CalTrans] considers the addendum to be a material amendment to the contract and is unable to identify in Papich's bid submittal that it considered and agreed to be bound to the terms of said addendum. [¶] A bidder's failure to acknowledge a material amendment to the contract renders its bid nonresponsive. Unless Papich is able to provide documentary evidence that it establishes it considered and agreed to be bound by the requirements of Addendum #1 its bid may be rejected."

In the same letter, CalTrans noted Papich listed subcontractors Truesdell Corporation and Viking Construction as each performing one hundred percent of several

4

of the same tasks, including removal of unsound concrete, preparing concreted bridge surface, rapid setting concrete patch, and five more tasks. In the letter, CalTrans cured the problem by stating that "[i]f Papich is awarded contract 06-360214, it must perform" these tasks "with its own forces" to comply with section 4106.

On September 27, 2012, Papich sent a response letter stating: "It is the intent of [Papich] to provide, as requested, evidentiary proof of receipt (Attachment 1) and acknowledgement included with the bid book (Attachment 2) of Addendum #1 for the above mentioned contract. [Papich] also contends that the information provided by [CalTrans] in Addendum #1 was reviewed, understood and utilized in the preparation of our bid proposal for this contract. [Papich] also agrees to be bound by the requirements of Addendum #1."

On September 28, 2012, DeSilva sent a letter to CalTrans noting DeSilva had inadvertently supplied CalTrans with additional information on the subcontractor list "above and beyond what was required." DeSilva explained it had not listed All Steel Fence as a subcontractor in its bid because the value of the bid items it would perform was less than one-half of one percent of the bid and the information for All Steel Fence included on the subcontractor list submitted within 24 hours of the bid was additional information that was not required.

On October 3, 2012, Papich challenged DeSilva's bid as having changed the subcontractor list.

On October 9, 2012, CalTrans rejected DeSilva's bid as nonresponsive and explained: "Since [DeSilva] originally decided to self perform Fences, Gates and Railing, but subcontracted those items to All Steel Fence, Inc. on the revised bid list received on September 14, 2012, CalTrans finds your bid is nonresponsive. CalTrans

5

will proceed to award the contract to the lowest responsible bidder provided all requirements are met."

On October 22, 2012, DeSilva protested CalTrans's determination that its bid was nonresponsive and protested Papich's bid. On November 28, 2012, CalTrans agreed with part of the protest and determined Papich's bid to be nonresponsive. CalTrans informed Papich that "its bid is nonresponsive because it failed to properly submit the Subcontractor List." However, on December 4, 2012, CalTrans rescinded its determination based on its conclusion that some of the items separately listed as structure excavation, structure concrete, and structure backfill were parts of what was otherwise described as "bridge work." CalTrans's December 4, 2012 letter to Papich did not address Papich's failure to acknowledge the addendum to the information for bids.

On December 7, 2012, CalTrans rejected DeSilva's protest and explained no unfair advantage was granted to Papich by asking for evidentiary documentation proving it considered and agreed to be bound by the addendum. Also on December 7, 2012, Caltrans sent a letter to DeSilva affirming its determination DeSilva's bid was nonresponsive and awarding the contract to Papich.

### *Issuance of the Writ of Mandate and Subsequent Appeal*

In January 2013, DeSilva filed a petition for writ of mandate in which it requested that the trial court invalidate CalTrans's award of the contract to Papich. CalTrans and Papich opposed the petition. The trial court issued a statement of decision in which it explained CalTrans erred in determining DeSilva's bid to be nonresponsive and in waiving Papich's failure to agree to the addendum to the information for bids. Papich objected to the statement of decision, and the trial court overruled the objections.

6

In August 2013, Papich and CalTrans timely filed notices of appeal after the trial court granted a peremptory writ to set aside the contract.

In September 2013, DeSilva filed in this court a petition for relief from the automatic stay created by the appeal taken by CalTrans and Papich. DeSilva requested immediate relief in the form of an order staying performance of the contract at issue in this case. CalTrans and Papich opposed the petition. Papich's opposition rested, in part, on its assertion that "[w]rit relief has not proved to be a particularly effective remedy either. By the time a final determination is made, the work is typically completed, or underway to the point, as here, that it makes little sense to stop because of the expense involved in halting a major project."

This court denied DeSilva's petition for relief from the automatic stay on October 10, 2013.

## DISCUSSION

## I

### *Mootness*

This court decides only cases that are justiciable. (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 (*Wilson*).) "The concept of justiciability is a tenet of common law jurisprudence and embodies '[t]he principle that courts will not entertain an action which is not founded on an actual controversy. . . .' (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 (*California Water*); see also *Stonehouse Homes v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 540 (*Stonehouse Homes*).) Justiciability thus 'involves the intertwined criteria of ripeness and standing. A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' (*California Water*, at p. 22, fn. omitted.) But 'ripeness is

7

not a static state' (*Consumer Cause, Inc. v. Johnson & Johnson* (2005) 132 Cal.App.4th 1175, 1183), and a case that presents a true controversy at its inception becomes moot ' "if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character" ' (*Wilson v. L.A. County Civil Service Com.* (1952) 112 Cal.App.2d 450, 453)." (*Wilson, supra,* 191 Cal.App.4th at p. 1574.) An appeal is moot when a decision of "the reviewing court 'can have no practical impact or provide the parties effectual relief.' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214.)

In *Wilson, supra,* 191 Cal.App.4th at page 1571, the appellate court held completion of a public works project prior to the appeal mooted the legal challenge to validity of contracts under which the project was carried. Based on the possibility that completion of the public works construction in this case moots the present appeal, we inquired of the parties whether this court can still grant effective relief in the event appellants prevail. CalTrans, Papich, and DeSilva responded and represented to this court that the construction project remains underway and, as a consequence, this court may still grant effective relief. We accept the representations by all parties that this matter has not become moot. More importantly, we agree with CalTrans that the case presents issues on appeal that are of public importance and likely to recur. Thus, we proceed to consider the issues on the merits.

## II

### *Rejection of DeSilva's Bid as Nonresponsive*

CalTrans and Papich contend DeSilva's bid was properly rejected as nonresponsive to the information for bids because of the difference in subcontractors listed in the original bid and in the 24-hour subcontractor list. We reject their contentions.

## A.

### *Lowest Responsible Bidder with Responsive Bid*

CalTrans was required to award the contract at issue in this case to the lowest responsible bidder. (§ 10108 [requiring that, if the estimated cost for public construction project exceeds $25,000, "the district or agency shall solicit bids in writing and shall award the work to the lowest responsible bidder or reject all bids"].) "A bid is responsive if it promises to do what the bidding instructions require." (*MCM Const., Inc. v. City & County of San Francisco* (1998) 66 Cal.App.4th 359, 368.) Thus, a responsive bid must conform to the public agency's specifications for the contract. (*Bay Cities Paving & Grading, Inc. v. City of San Leandro* (2014) 223 Cal.App.4th 1181, 1188 (*Bay Cities Paving*).)

As part of a responsive bid, bidders on public construction contracts must list subcontractors who will provide work above a certain threshold amount. As pertinent to this case, the Public Contract Code requires any bid for construction of any public work or improvement list, in the bid or offer to perform the work, "[t]he name, the location of the place of business, and the California contractor license number of each subcontractor who will perform work or labor or render service to the prime contractor in or about the construction of the work or improvement . . . in an amount in excess of one-half of 1 percent of the prime contractor's total bid or, in the case of bids or offers for the construction of streets or highways, including bridges, in excess of one-half of 1 percent of the prime contractor's total bid or ten thousand dollars ($10,000), whichever is greater." (§ 4104, subd. (a)(1).) Subdivision (b) of section 4104 specifies that "[t]he prime contractor shall list only one subcontractor for each portion as is defined by the prime contractor in his or her bid."

On appeal from a judgment that resolves a challenge to the award of a public contract, "our function is the same as the trial court's -- to decide whether the public entity's decision is supported by substantial evidence. Our review is limited to an examination of the proceedings to determine whether the [public agency]'s actions were arbitrary, capricious, entirely lacking in evidentiary support, or inconsistent with proper procedure. There is a presumption that the [public agency]'s actions were supported by substantial evidence . . . . We may not reweigh the evidence and must view it in the light most favorable to the [public agency]'s actions, indulging all reasonable inferences in support of those actions." (*Ghilotti Construction Co. v. City of Richmond* (1996) 45 Cal.App.4th 897, 903 (*Ghilotti*).)

## B.

### *DeSilva's 24-Hour Subcontractor List*

As the trial court noted, "[t]he parties do not dispute whether [DeSilva] was required to list All Steel Fence in its bid or 24-Hour Subcontractor List; it was not." Here, the information for bids echoed the requirement of section 4104 that every bidder on the contract in this case disclose every subcontractor slated to perform more than one-half of one percent of the work. Under DeSilva's bid of $31,677,677, one-half of one percent amounts to $158,388.39. DeSilva's 24-hour subcontractor list included work by All Steel Fence amounting to $15,023 -- constituting less than one-tenth of one percent of DeSilva's bid. Even so, CalTrans notified DeSilva its bid was nonresponsive on grounds DeSilva did not list All Steel Fence in its original bid submission. CalTrans asserted it assumed "DeSilva Gates originally decided to self perform Fences, Gates and Railing" so that subsequent delegation of the work to All Steel Fence constituted a material change in the bid.

## C.

### *DeSilva's Bid Was Responsive*

DeSilva's bid was responsive to CalTrans's information for bids and complied with the Public Contract Code. Papich and CalTrans do not dispute DeSilva had no legal requirement to list All Steel Fence in its bid. Thus, when CalTrans initially opened bids on September 14, 2012, there were no grounds for declaring DeSilva's bid to be nonresponsive. Accordingly, DeSilva's bid became nonresponsive only if the submission of DeSilva's 24-hour subcontractor list ran afoul of the information for bids or the Public Contract Code.

Although DeSilva's 24-hour subcontractor list was not exactly the same as its subcontractor list on the original bid, All Steel Fence was not slated to perform more than one-tenth of one percent of the total contract amount. Thus, the disclosure of All Steel Fence's scope of work in DeSilva's 24-hour subcontractor list constituted additional information that was accurate but unnecessary. (§ 4101.) The listing of All Steel Fence was not deceptive, indicated no shift of work from another subcontractor to All Steel Fence, and showed no attempt by DeSilva to flout the requirements of the information for bids. Notably, the information for bids did not prohibit the listing of subcontractors performing work amounting to less than the threshold disclosure amount of one-half of one percent. Because nothing prohibited the additional but unnecessary disclosure of subcontractors, DeSilva's bid was not rendered nonresponsive by listing All Steel Fence on its 24-hour subcontractor list.

CalTrans argues DeSilva's disclosure of All Steel Fence was prohibited by section 4101. Section 4101 states the Legislature's finding "that the practices of bid shopping and bid peddling in connection with the construction, alteration, and repair of public improvements often result in poor quality of material and workmanship to the

11

detriment of the public, deprive the public of the full benefits of fair competition among prime contractors and subcontractors, and lead to insolvencies, loss of wages to employees, and other evils." Section 4101 does not prohibit disclosure of a subcontractor who will perform less than one-half of one percent of work under a public construction contract. Instead, section 4101 expresses the intent only to discourage the practice of bid shopping.

Papich contends section 4106 prohibits the disclosure of any subcontractor slated to perform less than one-half of one percent of a public construction contract. We disagree. Section 4106 provides that "[i]f a prime contractor fails to specify a subcontractor or if a prime contractor specifies more than one subcontractor for the same portion of work to be performed under the contract in excess of one-half of 1 percent of the prime contractor's total bid, the prime contractor agrees that he or she is fully qualified to perform that portion himself or herself, and that the prime contractor shall perform that portion himself or herself." Nothing in section 4106 addresses the use or disclosure of a subcontractor slated to perform less than one-half of one percent of the contract.

Similarly, we reject CalTrans's reliance on section 4106 when it argues that "[w]hen subcontractors are listed on the subcontractor list form and submitted with the bid, it eliminates the problem of bid shopping as once a subcontractor is listed, it cannot be substituted without the permission of the agency letting the project, in this case CalTrans." Although true, the point is irrelevant. As CalTrans elsewhere notes, DeSilva did not and was not required to list All Steel Fence in its original bid. This is not a case in which the bidder substituted subcontractors without agency approval. We also reject CalTrans's assertion DeSilva's 24-hour subcontractor list gave "the appearance of bid shopping." There was no subcontractor listed for the work later disclosed to be

12

scheduled for All Steel Fence. For this reason, DeSilva's subsequent 24-hour subcontractor list did not list All Steel Fence as a change in subcontractors or even that any subcontractor other than All Steel Fence was ever considered for its portion of the work. As a result, CalTrans's assertion of the appearance of bid shopping depends on speculation and is entitled to no deference.

Papich argues DeSilva's disclosure of All Steel Fence on the 24-hour subcontractor list constituted a mistake, and as a mistake could be deemed nonresponsive by CalTrans. We reject the contention. Not every mistake on a bid is sufficiently significant to render the bid nonresponsive. For example, a typographical error may properly be treated as a trivial error that does not render a bid nonresponsive. (*Valley Crest Landscape, Inc. v. City Council* (1996) 41 Cal.App.4th 1432, 1442 (*Valley Crest*).) In the case of a subcontractor, the information for bids and section 4104 similarly deem the work of a subcontractor performing less than one-half of one percent of the contract amount to be insufficiently significant to require disclosure.

CalTrans did not deem DeSilva's bid to be nonresponsive due to the initial bid's failure to disclose work to be performed by All Steel Fence. Instead, CalTrans deemed the bid nonresponsive due to the *difference* between the bid and the 24-hour subcontractor list. However, the mere fact of difference did not render DeSilva's bid nonresponsive because the information for bids' requirement of a 24-hour subcontractor list indicated CalTrans expected some bidders would provide information not contained in the original bid. Otherwise, the 24-hour subcontractor list would be nothing more than an idle exercise in confirming what had just been submitted to CalTrans. " 'It certainly would amount to a disservice to the public if a losing bidder were to be permitted to comb through the bid proposal or license application of the low bidder after the fact, [and] cancel the low bid on minor technicalities, with the hope of securing acceptance of

13

his [or hers], a higher bid.  Such construction would be adverse to the best interests of the public and contrary to public policy."  [Citation.]'  (*Ghilotti, supra*, 45 Cal.App.4th pp. 908–909.)"  (*Bay Cities Paving*, *supra*, 223 Cal.App.4th at p. 1189.)

Both Papich and CalTrans assert we should defer to CalTrans's finding of fact that DeSilva's bid was nonresponsive to the information for bids.  We disagree.  Interpretation of a statute or a contract constitutes a question of law that is subject to de novo review.  (*The Fifth Day, LLC v. Bolotin* (2009) 172 Cal.App.4th 939, 946.)  Here, the question is whether DeSilva's submission of its 24-hour subcontractor list violated either the Public Contract Code or CalTrans's information for bids.  "In this case there is no question of substantial evidence since there is no fact of consequence to which the substantial evidence rule could apply."  (*Blue Cross of Cal. v. Department of Health Care Services* (2007) 153 Cal.App.4th 322, 330.)  The parties do not dispute whether or how DeSilva's 24-hour subcontractor list differed from its initial bid, but only whether that difference was legally significant.  And having reviewed the information for bids as well as sections 4104 and 4106, we conclude the difference did not render DeSilva's bid nonresponsive or confer CalTrans with discretion to impose an after-the-fact requirement that accurate but unnecessary information about subcontractors renders a bid fatally defective.  Because DeSilva's bid conformed with all requirements in the information for bids, CalTrans's purported finding of nonresponsiveness must be rejected.  Accordingly, the trial court did not err in concluding DeSilva's bid was responsive to the information for bids issued by CalTrans.

### III

### *Award of Project to Papich*

CalTrans and Papich contend CalTrans had discretion to waive Papich's mistake in not acknowledging the addendum to the information for bids.  We are not persuaded.

14

## A.

### *Standing*

We begin by considering Papich's contention DeSilva did not have standing in the trial court to challenge the award of the contract to Papich.**2** Papich reasons DeSilva lacked standing because, as a nonresponsive bidder, it had no interest in the contract. We reject this reasoning because, as we explained in part II, *ante,* DeSilva's bid was responsive to CalTrans's information for bids.

We also reject Papich's argument because a party has standing to seek a writ of mandate under Code of Civil Procedure section 1085 when "(1) the respondent has a clear, present, and usually ministerial duty to act, and (2) the petitioner has a clear, present, and beneficial right to performance of that duty." (*Monterey Mechanical Co. v. Sacramento Regional County Sanitation Dist.* (1996) 44 Cal.App.4th 1391, 1413-1414.) Here, CalTrans had a clear duty to award the contract at issue to the lowest responsible bidder or to reject all bids. (§ 10108.) And DeSilva, "[a]s potentially the lowest responsible bidder, . . . has a beneficial right in seeing the contract is properly awarded." (*Monterey Mechanical,* at p. 1414.) DeSilva is a beneficially interested party because its bid was lower than Papich's bid. Consequently, DeSilva had standing in the trial court to challenge the award of the contract to Papich.

## B.

### *Papich's Bid was Initially Deemed to Materially Deviate from the Information for Bids*

As the trial court recounted, CalTrans sent a letter to Papich after opening its bid in which CalTrans informed Papich it had "failed to acknowledge Addendum #1" to the contract. CalTrans stated the addendum constituted "a material amendment to the

---

**2**     Papich's standing argument relates solely to DeSilva's standing in the trial court.

15

contract" so that "[a] bidder's failure to acknowledge a material amendment to the contract renders its bid nonresponsive." However, rather than declare Papich's bid to be nonresponsive, CalTrans allowed Papich the opportunity to provide documentary evidence to prove it considered and agreed to be bound by the addendum. After receiving Papich's response, CalTrans waived the mistake and determined the bid to be responsive. CalTrans also informed Papich it had listed separate contractors as each performing some of the same tasks, but CalTrans applied section 4106 to cure the problem by stating Papich would perform the work with its own employees.

The trial court concluded Papich gained an unfair advantage when CalTrans allowed Papich the opportunity to cure its failure to acknowledge the addendum to the contract. The trial court explained that "[b]y issuing the letter, CalTrans allowed Papich to gain an unfair competitive advantage over other bidders. Papich could have 'backed out' by refusing to comply with CalTrans' request in the letter. CalTrans would have then been required to deem Papich's bid to be nonresponsive. Papich could have withdrawn it and would not have forfeited its bid bond." Based on the conclusion Papich should not have been given the opportunity to cure its failure to acknowledge the addendum to the contract, the trial court did not consider whether Papich's listing of separate subcontractors for the same tasks constituted an additional reason why the bid was nonresponsive.

## C.

### *Nonresponsive Bids Cannot be Cured if Doing So Confers an Unfair Advantage*

As we noted in part II, *ante,* a bid is responsive if it conforms to the public agency's specifications for the contract. (*Bay Cities Paving, supra,* 223 Cal.App.4th at p. 1188.) It is well established that " 'a bid which substantially conforms to a call for bids may, though it is not strictly responsive, be accepted *if the variance cannot have*

16

*affected the amount of the bid or given the bidder an advantage or benefit not allowed other bidders* or, in other words, if the variance is inconsequential.  [Citations.]' " (*Valley Crest, supra,* 41 Cal.App.4th at pp. 1440-1441, quoting *Konica Business Machines U.S.A., Inc. v. Regents of University of California* (1988) 206 Cal.App.3d 449, 454, italics added in *Konica*.)

In *Valley Crest*, this court considered a challenge by Valley Crest Landscape, Inc. (Valley Crest), the second lowest bidder on a City of Davis (City) project for which the contract required that the bidder perform at least 50 percent of the work itself.  (41 Cal.App.4th at p. 1435.)  Valley Crest objected that a lower bid by North Bay Construction, Inc. (North Bay) indicated 83 percent of the work would be performed by subcontractors.  (*Ibid.*)  The City gave North Bay the opportunity to explain its bid, and North Bay responded that its initial estimate of an 80 percent subcontractor component of the work had been in error.  (*Id.* at p. 1436.)  North Bay asserted proper calculation yielded a figure of only 44.65 percent for the subcontractor component of the bid.  (*Ibid.*)  The City accepted the explanation and awarded the contract to North Bay.  (*Id.* at p. 1437.)  Valley Crest petitioned for a writ of mandate, which the trial court denied. (*Ibid.*)

We concluded "that changing the subcontractor's percentages in North Bay's bid did not constitute a violation of the Act."  (*Valley Crest*, *supra*, 41 Cal.App.4th at p. 1443.)  Even so, we reversed on grounds North Bay's bid was nonresponsive and the City gave North Bay an unfair advantage by allowing it to "explain" its bid.  (*Id.* at p. 1443.)  As we explained, "listing the subcontractor percentages is a material element of the bid. Since it was a material element of the bid, North Bay could not change its bid to correct the mistake in stating the percentages. . . .  The City could not permit the mistake as to this material element of the bid to be corrected by purporting to 'waive an irregularity.'

17

Since North Bay's bid was nonresponsive, its contract is invalid." (*Ibid.*) In so concluding, we noted that "[w]aiver of an irregularity in a bid should only be allowed if it would not give that bidder an unfair advantage by allowing the bidder to withdraw its bid without forfeiting its bid bond." (*Id.* at p. 1442.)

Here, the letter by which CalTrans notified Papich it had failed to acknowledge the addendum to the information for bids also stated that "[a] bidder's failure to acknowledge a material amendment to the contract renders its bid nonresponsive." However, rather than declare Papich's bid to be nonresponsive, CalTrans allowed Papich the opportunity to cure its mistake by submitting documentary evidence that it considered and agreed to be bound by the addendum. The trial court did not err in concluding CalTrans abused its discretion in allowing one bidder to correct a mistake that the department itself deemed a "material" deviation but rejecting another bid even though it did not materially depart from the information for bids or the Public Contract Code.[3]

We reject CalTrans's and Papich's assertions that we must affirm CalTrans's decision to waive the irregularity or deviation in Papich's bid because CalTrans is entitled to deference on questions of fact. CalTrans engaged in no finding of fact when it decided Papich's bid was responsive despite an omission CalTrans deemed "material." Whether a state agency has discretion to waive a material deviation from the information for bids for a bidder does not constitute a question of fact for which the agency is entitled to deference. Instead, we conclude CalTrans abused its discretion by waiving a material defect in Papich's bid, thereby giving Papich an advantage over DeSilva. (*Valley Crest, supra,* 41 Cal.App.4th at pp. 1442-1443.) Accordingly, the trial court did not err in

---

[3] Even if we concluded both bids were responsive, the contract would be awarded to DeSilva as the next lowest bidder.

18

concluding CalTrans erred in allowing Papich to cure its material deviation from the information for bids.[4]

## DISPOSITION

The judgment is affirmed. DeSilva Gates Construction, LP, shall recover its costs on appeal, if any. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


_____/s/_____
HOCH, J.


We concur:


_____/s/_____
NICHOLSON, Acting P. J.


_____/s/_____
DUARTE, J.

---

[4]    Our conclusion obviates the need to consider whether Papich's listing of separate subcontractors for the same tasks constituted an additional reason why the bid was nonresponsive.