Filed 9/22/21  Marriage of Tearse CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of ANNE and JAMES TEARSE. | |
| ANNE TEARSE, Appellant, v. JAMES TEARSE, Respondent. | A159223 (San Mateo County Superior Court Case No. FAM-0122314) |

This case involves a prolonged marital dissolution between former spouses Anne and James Tearse[1] that, so far, has spawned seven appeals. For eight years Anne and James have sparred over child custody, retirement accounts, spousal support and more.  To date, we have decided six appeals, including a companion opinion filed today, No. A158582.  This case, along with No. A158582, deals with what was formerly the marital home, at 205 W. Floresta Way in Portola Valley.

Months after the trial court conditionally awarded the home to James, he filed an ex parte request for order (RFO).  At a postjudgment hearing, the

---

[1] The parties will be referred to by their first names for clarity.

1

trial court granted the following relief on the RFO:  James would receive temporary exclusive control of the home to get it sold in a timely fashion, an elisor would be appointed to get a listing agreement for the home signed, and a right of first refusal for both parties would be recognized.  Anne filed this appeal in response.  A year after the appeal was filed, James requested we take judicial notice of a stipulation subsequently entered into by the parties.  The stipulation memorialized various agreements pertaining to the home, its sale and listing.

We now grant James's request and take judicial notice of the stipulation.  Bearing in mind that litigation is not sport, we decline to spend valuable judicial resources deciding academic issues.  We conclude that the stipulation moots Anne's appeal because, in light of it, we cannot provide her any effectual relief.  While we view the appeal as moot, to effectuate the proper disposition of the issues raised here, we shall reverse the orders appealed to the extent they have been superseded by the parties' stipulation.  We resolve the appeal in this fashion not to correct error, but for the purpose of returning jurisdiction to the superior court and avoiding an inference that the orders under review, if left fully intact, were affirmed on the merits.

## I.  BACKGROUND

Anne Tearse filed for legal separation from her husband, James, in 2013.  Six years of contentious proceedings followed, culminating in a trial which produced a 170-page statement of decision from Judge Elizabeth M. Hill.  The judgment is now pending both appeal and cross-appeal in another docket before this court (No. A158068).

### A. *The Family Home in the Marital Judgment*

In the judgment, Judge Hill found the former family home at 205 W. Floresta Way to be community property, as "neither party claim[ed] a separate property interest."  The court also found the value of the home to be

$2.7 million. After determining the value of each party's equity in the residence, the court denied Anne's request for a deferred sale of the property. Instead, Judge Hill awarded the home to James, conditional on his ability "to obtain financing to remove [Anne's] liability for any indebtedness secured by the marital residence." In the event that James could not accomplish this buyout of Anne within 60 days, the court ordered the property to be listed for sale and sold "as-is."

The court also ordered Anne to vacate the residence upon proof of a buy-out or at the expiration of the buy-out period. Judge Hill finished the section by stating, "The Court reserves jurisdiction to make any order necessary for enforcement of the judgment." Eight weeks after the entry of judgment, Judge Hill recused herself from this case.

After the case was reassigned, James filed an RFO asking for, among other things: (1) the clerk to sign a listing agreement for the family residence, as an elisor for Anne, (2) property control of the home, (3) attorney fees and costs as sanctions, and (4) a right of first refusal for the purchase of the home. Along with the RFO, James submitted a declaration to support a request for sanctions under Family Code section 271.[2] Anne filed a responsive declaration opposing James's requests and herself asking for an award of attorney fees and costs. The trial court denied both sides' requests and instead set the matter for hearing in December of 2019. At the time of the hearing, the marital judgment was on appeal with this court (No. A158068).

---

[2] Undesignated statutory references, unless otherwise indicated, are to the Family Code.

3

## B. *The December 6, 2019 Hearing*

At the December hearing, Judge Richard DuBois (Judge Hill's replacement) ordered that Anne vacate the home and granted James temporary exclusive control of the property "so that he can work with the realtor to get it sold." Despite objections from Anne on the validity of James's declarations and the court's jurisdiction, Judge DuBois stated, "And the court is just making a legal decision that because the judgment states that it did reserve jurisdiction for the court to make any orders to help enforce the judgment that, in light of the fact petitioner is excluded from the residence, that the respondent should have the temporary exclusive use, possession, and control so that he can work with the realtor and also to maintain the community property interest."

Additionally, the court granted James's request for the court to sign the listing agreement via an elisor for Anne. On this point Judge DuBois stated, "The tentative decision would be that the judgment ordered that the [property] be listed within 60 days after entry of the judgment with an agent of husband's choice. The court reserved jurisdiction to make any other orders to enforce the judgment. And there's no evidence that [Anne] has signed the listing agreement despite the fact it's been presented to her."

As a final matter, the court granted James's request to be given permission to have a right of first refusal for purchase of the residence. Judge DuBois stated, "Just the tentative ruling in that would be to grant that request. There's no prohibition against either party purchasing the residence. And for that reason the court does not find that request . . . to be unreasonable just based upon the face of the judgment as it exists." After objections from Anne, the judge later clarified that the right of first refusal would be given to *both parties*. The court denied James's other requests or reserved them for a later date. The court finished by ordering James's

4

attorney to prepare a formal order reflecting the court's rulings, and it issued a minute order. On December 16, 2019, over Anne's objections, Judge DuBois subsequently signed and filed a formal written order.

Anne filed a notice of appeal on December 17, 2019, challenging the above minute order and formal written order.

## C. *The Request for Judicial Notice*

On February 22, 2021, James requested that this court take judicial notice of a stipulation and order entered into on December 7, 2020, and filed in the trial court on January 12, 2021. The stipulation contains 18 bullet points, the most important of which are:

"1. . . . Anne Tearse . . . will agree to vacate the W. Floresta residence by Saturday, January 16, 2021 . . . . [¶] . . . [¶] 3. . . . Elaine White of Coldwell Banker (listing agent for the residence) will consult with both parties, Anne & James, to decide on the listing price for the property. . . . Both parties will cooperate in signing any documentation necessary to list the home for sale . . . . [¶] . . . [¶] 6. . . . Both Anne & James will sign the RealVitalize contract with Coldwell Banker, to allow necessary repairs and improvements to be accomplished to the W. Floresta residence and will cooperate fully . . . to effectuate the repairs and improvements to the residence. [¶] . . . [¶] 16. Neither party shall reside in the house during the time the house is listed for sale. The marital judgment contains a 'right of first refusal' to purchase the property . . . ." (Boldface omitted.)

In her response to James's request for judicial notice, Anne does not directly contest the appropriateness of our taking judicial notice of this order. She instead argues that this court should not consider James's assertions of fact made within the request itself.

## II. DISCUSSION

James argues that the stipulation and order from December 7, 2020, moots Anne's appeal of the minute order and formal written order entered in December 2019. On this point, James points out that Anne's primary issues with the orders—the granting of exclusive use to James, the clerk's signing of the listing agreement, and the recognition of the right of first refusal—are no longer live controversies. Anne contends that despite the subsequent stipulation, we can still grant her effectual relief. Anne's argument on this point is that the possibility of future attorney fees and sanctions relating to this action defeats a mootness finding. We disagree.

### A. *The Trial Court's Jurisdiction To Issue the December 2019 Orders*

At the outset, since Anne's contention that Judge DuBois lacked the jurisdiction to issue the orders he did in December of 2019 potentially affects whether, by dismissing for mootness, we would be affirming void orders, we must address the matter of trial court jurisdiction. Throughout her opening and reply briefs Anne posits that because she appealed the marital judgment, Code of Civil Procedure section 916, subdivision (a) precluded the trial court from issuing any order, even one in furtherance of enforcing the marital judgment.

The relevant part of that statute reads: "[T]he perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." (Code Civ. Proc., § 916, subd. (a).) Though there are exceptions—and we will address one which applies here—the applicability of this statute to this case presents a potential problem. Once a stay under Code of Civil

6

Procedure section 916, subdivision (a) goes into effect, any later order issued by the trial court is void because it has been "*divested of power* to act on matters 'embraced in' or 'affected by' the appealed judgment or order." (Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2020) ¶ 7:2.)  And if an appeal of such an order is dismissed by an appellate court (through a finding of mootness, for instance), the dismissal would act as an affirmation of a void order.  (*Id.*, ¶ 5:48.)

Thankfully, we can avoid such a disposition in this case because one of several exceptions to Code of Civil Procedure section 916, subdivision (a) applies here.

Code of Civil Procedure section 917.4 states:  "The perfecting of an appeal *shall not stay enforcement* of the judgment or order in the trial court if the judgment or order appealed from directs the sale, conveyance or delivery of possession of real property which is in the possession or control of *the appellant* or the party ordered to sell, convey or deliver possession of the property, unless an undertaking in a sum fixed by the trial court is given . . . ."  (Italics added.)  The plain language of this statute is unambiguous. (*Barnes v. Chamberlain* (1983) 147 Cal.App.3d 762, 766.)  Where an appellant is ordered in a judgment to deliver possession or convey real property, they may stay the enforcement of said judgment only upon the posting of a bond or undertaking.  (*Ibid.*)

The applicability of the exception to this case is clear-cut.  The marital judgment awarded the real property at the W. Floresta residence to James, contingent on his ability to buy Anne out.  And if he could not buy her out, then the home would be sold.  This judgment therefore comprised two of the prerequisite conditions for the statute to apply; it directed the sale of real property and its delivery of possession from Anne to James.  (Code Civ. Proc.,

7

§ 917.4.) Anne was also *in possession* of the property at the time of filing appeals of the marital judgment and the orders from Judge DuBois. Under the statute, Anne was required to post a bond or undertaking. (See *Barnes v. Chamberlain*, *supra*, 147 Cal.App.3d at p. 767; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 7:4.) She did neither.

We conclude that Judge DuBois did not lack jurisdiction to issue the December 2019 orders granting James exclusive control over the W. Floresta residence, appointing an elisor to sign the listing agreement, and recognizing a right of first refusal for both parties.

## B. *The Request for Judicial Notice*

Pursuant to California Rules of Court, rule 8.252, James has requested that we take judicial notice of a stipulation entered into by Anne and James in December of 2020. Anne opposes "any consideration of the assertions of fact . . . in the request for judicial notice" on the ground that they are "incomplete" and "misleading," but she offers no legal argument in response to James's contention that we may judicially notice documents that may resolve a mootness question.

Although circumstances in which we may consider evidence pertaining to matters occurring subsequent to an order or judgment on appeal are rare (*In re Zeth S.* (2003) 31 Cal.4th 396, 405; see *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [extraordinary circumstances must be present in both the judicial notice and Code of Civil Procedure section 909 contexts]), we agree with James that we have such circumstances here. (*Center for Biological Diversity v. Department of Conservation* (2018) 26 Cal.App.5th 161, 170 ["resolving . . . [a] mootness question constitutes exceptional circumstances"].) We shall therefore grant James's request for judicial notice. (Evid. Code, §§ 452, subd. (d), 459, subd. (a); Cal. Rules of Court, rule 8.252(a).)

## C. *General Principles of Mootness*

Perhaps the most basic limitation on our authority as an appellate court is that we will not " ' " 'give opinions upon moot questions or abstract propositions,' " ' " nor will we " ' " 'declare principles or rules of law which cannot affect the matter in issue in the case before [us].' " ' " (*People v. Pipkin* (2018) 27 Cal.App.5th 1146, 1149, quoting *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) Rather, we reserve our authority to address only " 'ripe' " controversies; they are issues which have "sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22.) But ripeness is not static. (*Consumer Cause, Inc. v. Johnson & Johnson* (2005) 132 Cal.App.4th 1175, 1183.) Even a case that presents a true controversy at its inception becomes moot " 'if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character.' " (*Wilson v. L. A. County Civil Service Com.* (1952) 112 Cal.App.2d 450, 453.)

"A case is considered moot when 'the question addressed was at one time a live issue in the case,' but has been deprived of life 'because of events occurring after the judicial process was initiated.' " (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574.) This continuing test for mootness requires that we cease our work on a pending appeal and dismiss it—or in some circumstances, as further explained in our opinion filed today in No. A158582, reverse the order or orders under review as moot—if, at a certain point, circumstances come about that prevent us from granting the appellant any effectual relief. (*Id.* at pp. 1574–1575.) The pivotal question in determining mootness, therefore, is whether a court can grant the plaintiff any effectual relief. (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 227.)

9

**D.** *This Appeal Is Moot*

Because mootness is a question of whether we can grant effectual relief, we first examine what relief Anne seeks in her appeal. In her opening brief, Anne argues for the reversal of the trial court's orders from December of 2019. Those orders, in substance, granted James exclusive temporary use, possession, and control of the W. Floresta residence; they appointed an elisor to sign a listing agreement for the sale of the home; and they recognized in both parties a right of first refusal regarding the residence. Anne's 11 arguments in her opening brief also support reversal as her requested relief.

As to the grant of possession to James, Anne claims that if upheld, it "would dispossess Anne of her home, a basic necessity of life for her and the dependent children." In relation to the listing agreement, Anne claims that it is prejudicial to her in that it contains provisions which "are contrary to Anne's interest in the home and that diminish the value [of] Anne's share in the income from any sale of the home." Regarding the right of first refusal, Anne argues that the court's ruling permits James to act without regard for her rights, and that such a right does not explicitly exist in the marital judgment.

This line of argument from Anne necessarily brings into play the stipulated order brought before us through James's request for judicial notice. On the issue of exclusive use, the stipulation set out that Anne would vacate the residence; that a new writ of possession would be issued; and that neither party would reside in the house during the time it is listed for sale.

As to the listing agreement, the stipulation states that the listing agent will consult with both parties on the listing price; that the residence will be listed on the multiple listing service (MLS) index; and that both parties will cooperate in signing any documentation necessary to list the home for sale. Finally, the stipulation recognizes that the marital judgment contains a right

10

of first refusal to purchase the property after an MLS listing has been posted, provided that the listing is consistent with the real market value of the home and its listing price.

In light of these stipulations, we conclude that we cannot grant Anne any effectual relief.

Had we reversed the December 2019 orders before the parties entered into their subsequent stipulation, that would have had the substantive effect of allowing Anne to remain in the W. Floresta residence. But Anne thereafter agreed to vacate the property. It now makes no difference whether James was granted exclusive possession because Anne's original opposition to that grant was on grounds of needing a place to live. Anne's additional arguments about this ruling are also mooted by the subsequent stipulation. Anne claims she would have no access to the home, allowing James to engage in repairs of the property under his complete control without input from Anne. Yet the stipulation states both parties will cooperate with the listing agent on all necessary repairs and both agree to sign any necessary paperwork to effectuate the *agreed-upon* repairs.

The aspect of the December 2019 orders that Anne attacks most vigorously is the appointment of the elisor to sign the listing agreement. In her opening brief Anne claims this order to be prejudicial for its imposition of listing agreement provisions she opposed. Prior to the stipulation, a reversal from us would have cancelled the listing agreement. But any such relief now would make no sense because in the stipulation Anne agreed to cooperate in signing any documentation necessary *to list the home for sale*.

Anne claims the listing agreement would diminish her net proceeds from the sale of the home, because the price in the listing agreement was $400,000 below the fair market value of $2.7 million specified in the marital

11

judgment. But in the stipulation Anne agreed to receive the listing agent's professional guidance on the final price. The final listing price is therefore not $2.3 million, but whatever Anne, James, and the listing agent decide upon. Anne also claims the agreement would shut her out of the process of selling the home. She later stipulated, however, that she would take part in completing property disclosures, removing liens, removing fencing, and communicating with James and the listing agent. Finally, Anne's claim that the listing agreement precludes the home from being listed in the MLS[3] is again undone by the subsequent stipulation. "The residence will be listed on the [MLS] index."

Anne's final argument on this point is that it still matters that the listing agreement *contained* prejudicial terms. Our reversal would nullify these provisions of the listing agreement, she contends. Yet the subsequent stipulation has, in essence, already done so. The stipulation includes new express terms which effectively undo those Anne believed to be prejudicial.

Regarding the right of first refusal, Anne's characterization of the ruling makes it seem as though James was the only one to receive that right. The stipulation regarding this right is unambiguous; it states outright that the marital judgment contains a right of first refusal. Anne's complaint that this right runs only to James is incorrect. Judge DuBois specifically acknowledged on the record that, in the process of listing the property for sale, the right of first refusal would apply to both Anne and James. To the extent there is some arguable ambiguity, the terms of the stipulated order must be read in light of Judge DuBois's comments at the December 6, 2019

---

[3] Anne claims throughout her briefs that the trial court's orders allow for the W. Floresta residence to not be listed in the MLS. But Judge DuBois explicitly stated, "Well, the court is just making that order that the listing agreement provide that it must go on the M.L.S."

hearing about the listing and sale process contemplated by the judgment, comments of which the parties were aware when they entered the stipulation and which necessarily informed their mutual understanding. That disposes of Anne's claim she has no right of first refusal.

Despite the prospect and the reality that Anne cannot gain practical benefit from our review of now superseded orders, she resists the conclusion that her appeal is moot, arguing that a decision on the merits would affect future requests for sanctions and attorney fees. The backdrop here is one in which the parties have wasted no opportunity to seek fee awards against each other. Presumably, Anne expects this pattern to continue. The record indicates Anne and James have moved for fees as sanctions against one another under section 271 on several occasions. And Anne has sought fees on several occasions under section 2030. Fee awards under both statutes are governed in large measure by judicial discretion.

Anne cites our decision in *Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68 (*Panoche*) in support of her contention that the impact a decision from us on the merits may have on future fee requests saves the appeal from mootness. In *Panoche*, we stated, "[t]he unresolved question of costs and attorney fees, by itself, is enough to defeat Panoche's mootness argument." (*Id.* at p. 96.) The context was important, though. *Panoche* involved a long-running dispute between the parties over which of them ought to bear the costs of complying with legislation mandating greenhouse gas reduction. (*Id.* at p. 71.) The parties proceeded to arbitration, wherein the panel concluded Panoche bore the burden of costs. (*Id.* at p. 72.) Panoche successfully vacated the arbitration award which we reviewed on appeal. (*Ibid.*)

We concluded that Panoche's mootness argument lacked merit because the arbitration agreement between the parties included a fee-shifting provision allowing recovery of arbitration costs and reasonable attorney fees by the " 'prevailing party.' " (*Panoche*, *supra*, 1 Cal.App.5th at p. 96.) The arbitrators had postponed ruling on the fees pending the outcome of the appeal. (*Ibid.*) Panoche's mootness argument was therefore defeated because the arbitrators' decision would drive the " 'prevailing party' " determination in the subsequent arbitration. (*Ibid.*) There is no such outcome-determinative issue here. Any future fee requests will be governed by judicial discretion.[4]

Anne also cites *Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, but properly understood, that case cuts against her. There, defendant Wood entered into a settlement agreement with a bank and its officers. (*Id.* at p. 203.) This settlement mooted a previous action between the parties, which was dismissed with prejudice. (*Id.* at p. 204.) Later, the bank filed a new action against Wood, alleging breach of the settlement agreement. (*Ibid.*) The trial court found Wood had breached the settlement and ordered him to pay $22,000 in attorney fees, which he appealed. (*Ibid.*)

---

[4] To the same effect is *Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, another case Anne cites. There, the appellate court determined the appeal was not moot as to declaratory relief, even though the recall election was unsuccessful, "because the propriety of the trial court's ruling on the merits of the action determines whether Citizens was eligible for an award of attorney fees as the successful party." (*Id.* at p. 365.) Anne leaves out an important aspect of that case, namely that the cross-complainant had already filed a motion for award of attorney fees under Code of Civil Procedure section 1021.5, and the trial court had awarded fees. (*Carson Citizens for Reform*, at pp. 363–364.) Thus, the court could not dismiss the appeal as moot because fees arising under that statute *depended* on the trial court's ruling on the merits of the controversy. (*Id.* at p. 365.)

On appeal the bank raised a mootness argument, contending that the appeal should be dismissed because the settlement agreement had expired. (*Viejo Bancorp, Inc. v. Wood*, *supra*, 217 Cal.App.3d at p. 205.) The appellate court disagreed. "While it is true the agreement has expired," the court said, "an appeal will not be dismissed as moot if '*any material question* remains to be determined.' " (*Ibid.*) The court found a material question remained because leaving the trial court judgment unreversed effectively prevented Wood from litigating the key issue in the second action: his liability. (*Ibid.*) Whether Wood had indeed breached the settlement formed the very basis of the bank's claim for damages. (*Ibid.*) Additionally, the finding of mootness would essentially have left unanswered the propriety of the award of $22,000 in attorney fees. (*Id.* at pp. 205–206.)

The reasoning in *Viejo* points to the flaw in Anne's argument. The record here does not show that attorney fees were awarded or sanctions imposed on either party.[5] Nor do we deal here with an automatic award of fees to a prevailing party. Anne's claim that her opposition to the trial court orders will result in the award of attorney fees to James is purely speculative. And her claim that our implied affirmance of the trial court's order through a mootness dismissal would subject her to "the menace of sanctions" is also speculative. Each tactical choice either party makes in filing RFO's, appeals, and otherwise availing themselves of the privilege of asking for judicial intervention must stand on its own merits and will be assessed when and if any such choice is called into question.

---

[5] The marital judgment did impose $50,000 in sanctions on Anne under section 271. But that judgment is not on appeal here. No sanctions have been imposed nor attorney fees awarded in connection with Judge DuBois's orders in December 2019.

15

We conclude by quoting and elaborating upon what we said today in our opinion resolving appeal No. A158582, which raises related issues concerning the occupancy and disposition of the 205 W. Floresta Way house. We concluded that appeal was moot in part, too, in light of the same stipulated order that moots this appeal. As we said there: "We are tempted to use a metaphor about not letting the tail wag the dog, but said more plainly we are simply not inclined to devote judicial resources to [the] speculative project" of deciding an academic issue because it might somehow impact some future discretionary decision on issues of attorney fees. This case is an especially inappropriate vehicle in which to do that. From what we can see, the parties appear to have approached most of the proceedings to date on some unspoken mutual understanding that it is better to spend substantial amounts of whatever community assets are available for division on the expense of litigating every inch of contested ground, rather than to exhaust their efforts at finding agreement wherever possible and litigating only as a last resort. The January 2021 stipulated order is a welcome change in this unfortunate and wasteful pattern. We will not spoil it by reaching back and declaring a "winner" on an issue that has been mooted by stipulation.

## III. DISPOSITION

We grant James's request that we take judicial notice of the December 7, 2020 stipulation and the findings and order entered pursuant to that stipulation on January 12, 2021. We reverse as moot the December 6, 2019 minute order and the December 16, 2019 order memorializing the substance of that minute order, to the extent those mooted orders have been superseded by the stipulated findings and order entered January 12, 2021. (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134–135; see *Coalition for a*

16

*Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 942–947.) This reversal does not imply that the orders were erroneous on the merits, but is solely for the purpose of returning jurisdiction to the superior court and avoiding an inference that the appealed orders were affirmed.

The parties to bear their own costs on appeal.

STREETER, Acting P. J.

WE CONCUR:

TUCHER, J.[*]
BROWN, J.

---

[*] Presiding Justice of the Court of Appeal, First Appellate District, Division Three, sitting by assignment pursuant to article VI, section 6 of the California Constitution.