[No. B176381. Second Dist., Div. Five. Sept. 22, 2005.]

CONSUMER CAUSE, INC., Plaintiff and Respondent, v.
JOHNSON & JOHNSON et al., Defendants and Respondents;
BILL LOCKYER, as Attorney General, etc., Objector and Appellant.
[And four other cases.*]

*Consumer Cause, Inc. v. Johnson & Johnson (No. BC224732); Consumer Cause, Inc. v. Howmedica, Inc. (No. BC225508); Consumer Cause, Inc. v. Sofamor Danek Group, Inc. (No. BC225509); Consumer Cause, Inc. v. Ethicon, Inc. (No. BC233102).

COUNSEL

Bill Lockyer, Attorney General, Tom Greene, Chief Assistant Attorney General, Theodora P. Berger, Assistant Attorney General, and Edward G. Weil, Deputy Attorney General, for Objector and Appellant.

Law Offices of Morse Mehrban and Morse Mehrban for Plaintiff and Respondent.

Fulbright & Jaworski, Jeffrey B. Margulies, Susan Y. Lee; David B. Sadwick, Tatro Tekosky Sadwick; Pillsbury Winthrop Shaw Pittman and Michael J. Steel for Defendants and Respondents.

## OPINION

**ARMSTRONG, J.**—This is a Proposition 65 (Health & Saf. Code, § 25249.5 et seq.)[1] case brought by a private organization called Consumer Cause, Inc., against a number of manufacturers of stainless steel surgical stents and similar implantable surgical devices.[2] The complaints alleged that the devices were composed of nickel and nickel compounds, chemicals known to the state to cause cancer, and that the manufacturers had failed to warn consumers of the exposures, thus violating section 25249.6, which provides that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer . . . without first giving clear and reasonable warning . . . ." The case was resolved with a consent judgment which was approved by the trial court (§ 25249.7, subd. (f)(4)) and which included an award of $58,000 in attorney fees to Consumer Cause.

---

[1] All future references are to the Health and Safety Code unless otherwise indicated.

[2] There were five complaints, later consolidated. Defendants are Johnson & Johnson, Cordis Corp, Ethicon, Inc., Warsaw Orthopedic Inc., Howmedica, Howmedica Osteonics Corporation and Stryker Corporation, and Sofamor Danek Group, Inc., Medtronic, Inc. and Sofamor Danek Manufacturing.

The appeal was filed by the Attorney General, who objected to the settlement below.[3] (§ 25249.7, subd. (f)(5).) He argues, inter alia, that the warnings specified in the consent judgment do not satisfy the statute, and that although the consent judgment purports to apply to a long list of implantable surgical devices, plaintiff had no authority to settle claims as to many of those devices because they were not included in the preliminary notices. (§ 25249.7, subd. (d)(1).) We saw a more fundamental problem, that of justiciability, and asked the parties to brief that issue.

Both defendants and the Attorney General responded, arguing, inter alia, that the trial judge had discretion to enter the judgment. We have concluded that this case does not, and has not for some time, presented a justiciable controversy, and should have been dismissed. Although the case was apparently filed in the good faith belief that defendants were in violation of the statute, by the time the trial court entered the consent judgment, plaintiff no longer held that belief. In its motion seeking court approval of the settlement, plaintiff wrote that no civil penalty was warranted "because the Parties have determined that the Covered Products currently and previously distributed in California have not violated Proposition 65 and that all Covered Products fall within the 'no significant risk level' provided under Proposition 65."[4]

Defendants took the same position. During the proceedings concerning the approval of the consent judgment, they filed an expert declaration to the effect that "the specific products at issue in this action posed a no significant risk level of exposure and, as currently marketed, did not require a warning under Proposition 65."

The substance of the consent judgment is in accord. It does not mandate a warning for any product now manufactured by any of the defendants. Instead, it specifies the warnings to be given *if* any of the defendants—or, under the opt-in procedures of the judgment, any other manufacturer of similar devices—ever in the *future* manufactures a device which requires a warning. It is, in plaintiff's words, meant to "act prophylactically to avert future violations and to mandate warnings where required by Proposition 65."

---

[3] Defendants have argued that the Attorney General has no standing to appeal. Given our resolution of the case, we perhaps need not reach the contention. At any rate, we find that the Attorney General has standing. Defendants' argument is that section 25249.7, subdivision (f)(5), which provides that the Attorney General may "participate" in any proceeding regarding court approval of a settlement, gives the Attorney General the right to participate in an appeal filed by someone else, but not to initiate an appeal. We find the construction unreasonably strained. The Attorney General is a party whose interest is injuriously affected by the judgment, and has a right to appeal. (Code Civ. Proc., § 902; *Winter v. Gnaizda* (1979) 90 Cal.App.3d 750 [152 Cal.Rptr. 700].)

[4] Under section 25249.10, subdivision (c), no warning need be given if the exposure "poses no significant risk assuming lifetime exposure at the level in question . . . ."

We do not see that either Proposition 65 or the rules pertaining to justiciability allow such purely prospective and speculative litigation. Further, in our view, there is nothing to be gained by such litigation. Proposition 65 itself "mandates warnings," and "averts violations" by making exposure without a warning unlawful and subject to penalties.

Given the lack of justiciable controversy, the consent judgment must be vacated. Further, given plaintiff's concession that the complaint has no merit, the complaint must be dismissed.

## Background[5]

Under Proposition 65, any person who "violates or threatens to violate" section 25249.6 may be enjoined, and "any person who has violated" that statute is liable for civil penalties. (§ 25249.7, subds. (a), (b).) A private person may bring an enforcement action "in the public interest" if a 60-day notice is given to the alleged violator and to the Attorney General and local prosecutor and if neither the Attorney General or the local prosecutor is diligently prosecuting an action against the violation. (§ 25249.7, subds. (d)(1), (2).)

Consumer Cause filed such an action. It alleged that defendants manufactured, distributed, and sold surgical implants composed of nickel and nickel compounds, chemicals known to the State of California to cause cancer, that when the devices were implanted they would leach chemicals into the body (or, in some of the complaints, that they would expose vital organs to the chemicals), and that defendants had failed to give warnings to the persons into whose bodies the devices were implanted, thus violating section 25249.6. The complaints did *not* allege that defendants threatened to violate the statute.

The complaints against Johnson & Johnson, Ethicon, and Cordis list only one product each, "stainless steel sutures," or "stainless steel coronary stents." The complaint against Sofamor Danek Group, Inc., Medtronic, Inc., and Sofamor Danek Manufacturing lists nine, all with general descriptions such as "surgically implantable metallic rods," or "surgically implantable metallic hooks," while the complaint against Howmedica, Howmedica Osteonics Corporation and Stryker Corporation lists 79 products, ranging from the general ("surgically implantable metallic screws") to the specific ("Omego Plus Compression Hip Screw System," or "Leibinger King Combo").

---

[5] Defendants' request that we take judicial notice of the statement of reasons for one of the regulations implementing Proposition 65 is denied, in that the information is not helpful to our resolution of this case. The Attorney General's request that we take judicial notice of the 60-day notices in this case is granted.

In addition to the section 25249.6 cause of action described *ante*, the complaints brought causes of action under Business and Professions Code section 17200, alleging that defendants violated that statute through an unlawful action, the violation of section 25249.6.

Plaintiff sought injunctive relief, civil penalties, and, under the Business and Professions Code section 17200 cause of action, disgorgement and restitution. (The consent judgment does not include any of those remedies.)

The cases were filed in February 2000. In November of that year, the trial court issued a case management order identifying issues of law and fact. The fact questions included: "Do the medical devices contain nickel? . . . What is the lifetime exposure to nickel, if any, from implanted medical devices? . . . What is the appropriate no significant risk level for exposure assessment to nickel released from implanted medical devices, if any? . . . Is the level of nickel released into the body, if any, above the 'no significant risk level' of exposure necessitating a Proposition 65 warning?"

The questions were answered by plaintiff's statement, in the motion seeking court approval of the consent judgment, that defendants' products fell within the no-significant-risk level, and the statement of defendants' expert, appended to their reply to the Attorney General's objections to the consent judgment. Dr. Michael Lakin declared that "I was hired by Defendants to, among other things, determine a threshold exposure level that would require a Proposition 65 warning for the chemicals at issue in this case, and to develop a formula for determining the exposure levels caused by the types of products at issue in this action . . . . In performing this work I concluded that the specific products at issue in this action posed a no significant risk level of exposure and, as currently marketed, did not require a warning under Proposition 65."

The consent judgment reflects that those were the facts of the case.

On its terms, the consent judgment applies to 89 medical implants or devices, or categories of implants or devices, and includes every product listed in any of the complaints.[6] As to these products, referred to as covered products, defendants agree to give specified warnings if use of the product would result in an average lifetime exposure to nickel greater than a specified threshold which is to be determined with reference to a formula involving the number of years the implant would be in place, the concentration of nickel, and the surface area of the implant.

---

[6] The Attorney General argues that the list includes devices not found in the complaints or the 60-day notices. We need not resolve the question, but note that given the very general descriptions of many items, the Attorney General may be right.

The warning would be accomplished through a label warning or through an annual letter to customers who a defendant believes will sell a covered product in California.

In the opt-in provisions, the consent judgment provides that other manufacturers of medical implants or devices may become defendants in the action and be bound by its terms by executing a stipulation for entry of judgment. The judgment also provides that within 90 days after its entry, plaintiff may send 60-day notices of intent to sue "to any persons that Plaintiff has determined may be in violation of Proposition 65 based on facts substantially similar to the facts alleged" in the 60-day notices or complaints.[7] Each opt-in defendant is to pay $20,000. Twenty-five percent of that is to go to defendants to reimburse them for expert and other fees incurred in developing the consent judgment, and the remainder to a nonprofit organization "whose work relates to medical devices or nickel and/or chromium." The judgment recites that reimbursement of the settling defendants' costs is important, and bars plaintiff from settling with any other potential defendant prior to settling defendants' recoupment of those costs.

The consent judgment purports to be a "final and binding resolution and release" between not just plaintiff and defendants, but also defendants and "the general public of the State of California on whose behalf Plaintiff brought this action," for all "claims, violations, or causes of action for violation of Proposition 65, the Unfair Competition Act, or any other statutory or common law claim that could have been asserted against any Releasee or Downstream Releasee by the plaintiff based upon the facts alleged in the Notice Letters and/or the Complaints, . . ."

When the trial court approved the settlement and awarded fees to plaintiff, it found that the consent judgment "provides a substantial public benefit in defining when warning for exposure to certain harmful chemicals is required under Proposition 65."

## Discussion

■ The concept of justiciability involves the intertwined criteria of standing and ripeness. (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618]; *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59 [24 Cal.Rptr.3d 72].) In this case, standing is governed by statute. Plaintiff had standing because the

---

[7] The judgment itself is unclear on whether the procedures are in the alternative, that is, whether another manufacturer may opt in only after receipt of a new 60-day notice. The trial court order approving the settlement seems to indicate that new 60-day notices are mandatory, giving the Attorney General the right to object.

statute allows suits by a private person in the public interest if no public prosecutor is pursuing the action, and if proper notice is given.

 Ripeness is another matter. "The ripeness requirement . . . prevents courts from issuing purely advisory opinions. [Citation.] It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion. . . . [T]he ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306].) " 'A judicial tribunal ordinarily may consider and determine only an existing controversy, and not a moot question or abstract proposition.' " (*Wilson v. Los Angeles County Civil Service Com.* (1952) 112 Cal.App.2d 450, 452–453 [246 P.2d 688], citing 1 C.J.S. (1985) Actions, § 17a, p. 1012.)

 This case was ripe when it was filed, because there was an existing controversy, whether defendants were in violation of Proposition 65's warning requirements. However, ripeness is not a static state. "A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co. v. County of Los Angeles, supra,* 253 Cal.App.2d at p. 22.) " '[A]lthough a case may originally present an existing controversy, if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character, it becomes a moot case or question which will not be considered by the court.' " (*Wilson v. Los Angeles County Civil Service Com., supra,* 112 Cal.App.2d at p. 453, citing 1 C.J.S., *supra,* Actions, § 17a, p. 1012.)

 The ripeness status of this case changed once plaintiff discovered that the allegations of the complaint were wrong, that defendants had not violated and were not violating the law.[8] At that point, there was no longer a controversy before the trial court, and the court should have exercised its discretion by refusing to decide it. (3 Witkin, Cal. Procedure (4th ed. 1996)

---

[8] The Attorney General suggests that plaintiff's statement that the parties had determined that there was no Proposition 65 violation is not an admission, noting that the judgment also recites that "the parties disagree whether such exposure [that is, to nickel and nickel compounds] in fact occurs, or if such exposure does occur, whether it poses 'no significant risk' as defined in Proposition 65's regulations," and that "nothing in this Consent Judgment shall be construed as an admission by any party of any fact, issue of law, or violation of law." We think that under the facts of this case, plaintiff's statement, taken with defendants' statement and the lack of any provision for current relief in the consent judgment, is an admission.

Actions, § 79 [refusal to decide a case lacking in actual controversy is usually regarded as an exercise of discretion].) Further, nothing in Proposition 65 authorized further litigation, because there was no violation or threatened violation of the statute. ■ The statute does not give a private organization a right to sue (or to maintain a suit) in the name of the public where the public has not been harmed.

One of the Attorney General's contentions on appeal perfectly illustrates the ripeness problem. Before a trial court can approve the settlement of a Proposition 65 enforcement action brought by a private party, it must first find that "Any warning that is required by the settlement complies with this chapter." (§ 25249.7, subd. (f)(4)(A).) The Attorney General argues that the trial court erred in finding that the warnings specified in the consent judgment complied with the statute, because the methods were such that the warnings were not likely to be seen by the consumer.

The Attorney General set out his concern with candor, arguing that warning methods presented a difficult question, given that the products were likely to be removed from their boxes in an operating room, when the person who might suffer the exposure is unconscious, and concluding that "Those issues are best resolved in a case in which the parties agree that some warnings will be given, because each side will carefully consider the practicality, costs, and benefits of different warning mechanisms." How, the Attorney General reasonably asks, could the trial court find that the warnings complied, given the absence of a factual record which includes an actual product which requires an actual warning?

■ This is an eminently sensible argument, and one which illustrates the lack of ripeness. Methods of warning should be crafted when warnings are needed, based on a "actual set of facts," and not in the abstract. (*Pacific Legal Foundation v. California Coastal Com., supra,* 33 Cal.3d at p. 170.) Moreover, they should be crafted by the parties who have something at stake. In contrast, the warnings in the consent judgment were crafted by plaintiff with manufacturers who do not (and have not threatened to) manufacture products which require warnings.

Odder still, the warning rules crafted by these nonviolators will apply to manufacturers whose products do require a warning. That is so because section 25249.7 now requires that 60-day notices include a certificate of merit stating that after consultation with experts, the plaintiff believes that there is "a reasonable and meritorious case." (§ 25249.7, subd. (d)(1).)[9] Defendants

---

[9] The provision took effect on January 1, 2002. According to the Senate Floor Analysis, it was added to address the problem of abusive actions brought by private persons, who have

and the Attorney General seem to agree that this new provision would apply to 60-day notices sent out under the opt-in procedures. Thus, the judgment adopts a warning method chosen by manufacturers who do not make devices which require warnings, to be used by manufacturers who do make such devices, an unusual state of affairs.

We make a related observation about the trial court's finding that the consent judgment "provides a substantial public benefit in defining when warning for exposure to certain harmful chemicals is required under Proposition 65."

Consumer Cause sued on behalf of the general public and agreed to the warning threshold formula in that capacity. Through this judgment, plaintiff and defendants seek to foreclose future action by members of the general public, including any subsequent plaintiff who might seek advice from another expert, with an opinion based on perhaps newer or better research.[10] Yet, the judgment adopts a formula developed by an expert hired by defendants, a formula not tested through the crucible of litigation by an opponent with a real stake in the outcome. We can have no confidence that a formula so developed truly protects the public.

The problem is exacerbated by the opt-in procedures, through which the judgment will apply to products and manufacturers which have never been the subject of litigation, and which once again mean that nonviolators will have determined the duties of violators.

Nor does the judgment speak to its enforcement, except to say that a party may seek to enforce the terms and conditions by motion or order to show cause before the superior court. Does "party" include members of the public, whom the judgment purports to bind, or is Consumer Cause to be the sole monitor of compliance? The question is unanswered.

We are thus not convinced by defendants' arguments that the court properly exercised its discretion here because a court may consider the public interest when deciding whether a case is ripe (*Wilson v. Los Angeles County Civil Service Com., supra*, 112 Cal.App.2d at p. 453), and that dismissal would have been "less equitable" than the judgment actually entered, "because it would lead unresolved the strong public policies advanced by the

---

little or no supporting evidence. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 471 (2001–2002 Reg. Sess.) as amended Sept. 13, 2001, p. 3.)

[10] The judgment allows a settling defendant to petition the court for a ruling that a warning is no longer required, if nickel is removed from the Proposition 65 list, or if Proposition 65 is amended, or if a safe use determination is promulgated. There is no parallel provision for plaintiff, in the event that new scientific thinking establishes that nickel is more dangerous than previous research indicated.

resolution of Plaintiff's claims regarding exposure to nickel and chromium in defendants' implanted devices."

We see no public interest advanced by this judgment that is not already effectuated by Proposition 65's requirement that products which expose consumers to cancer-causing chemicals carry warnings to that effect. A dismissal would not, as defendants argue, have left future compliance "up in the air" and unresolved, but would have left defendants to continue to obey the law.

In order for a case to be ripe, "[t]he legal issues posed must be framed with sufficient concreteness and immediacy so that the court can render a conclusive and definitive judgment rather than a purely advisory opinion based on hypothetical facts or speculative future events." (*Hayward Area Planning Assn. v. Alameda County Transportation Authority* (1999) 72 Cal.App.4th 95, 102 [84 Cal.Rptr.2d 744].) "Hypothetical" and "speculative" perfectly describe this litigation. "Immediate" and "concrete" do not.

The Attorney General points out that with the language about "threatened violations," Proposition 65 authorizes purely prospective suits, and that once a case is properly filed, the court's equitable jurisdiction extends to the issuance of injunctions necessary to prevent future violations. That is so, but there was no allegation of a threatened violation here, and nothing in the consent judgment which indicates that that was the case. Because section 25249.7, subdivision (a) specifies that "threatened violations" are enjoinable, we must conclude that if there is no evidence of threat, but only the abstract possibility of violation, no injunction may issue.

Defendants cite the rule that a court may enter a stipulated judgment (Code Civ. Proc., § 664.6; *California State Auto Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664 [268 Cal.Rptr. 284, 788 P.2d 1156]), and the rule that "[t]he judgment of a court of competent jurisdiction entered upon a stipulation of the parties has the same effect as if the action had been tried on the merits." (*Avery v. Avery* (1970) 10 Cal.App.3d 525, 529 [89 Cal.Rptr. 195].) Neither rule solves the problem of justiciablity, or the problem presented by section 25249.6, which allows enforcement action where there is a violation or threatened violation, and not on the chance that there may one day be a violation. Further, on this record, if this case had been tried on the merits, it would have resulted in a verdict for defendants.

The Attorney General and defendants have expressed concern that a finding of no justiciability here would bar settlements where a defendant has not admitted to wrongdoing. It is certainly true that a case may

legitimately be settled without an admission of wrongdoing, and we do not hold to the contrary. We do hold that a trial court hearing a Proposition 65 case must dismiss that case when the plaintiff concedes that it lacks merit, and may not enter a judgment which, rather than resolving a dispute between the parties, purports to act like legislation, in that its function is to regulate the acts which may be undertaken by nonparties, at some speculative time in the future.

## Disposition

The consent judgment is vacated and the case remanded to the trial court for further proceedings consistent with this opinion. Each party to bear its own costs on appeal.

Turner, P. J., and Kriegler, J., concurred.