Filed 6/30/25

**CERTIFIED FOR PARTIAL PUBLICATION**<sup>*</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CONSUMER ADVOCACY GROUP, INC.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WALMART, INC., et al.,<br><br>    Defendants and Appellants. | A169022<br><br>(Alameda Co. Super. Ct. No. 23CV034270) |
| CONSUMER ADVOCACY GROUP, INC.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WALMART, INC., et al.,<br><br>    Defendants and Appellants. | A169800 & A169871<br><br>(Alameda Co. Super. Ct. No. 23CV047269) |

Plaintiff Consumer Advocacy Group, Inc. (CAG) filed two actions under Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986, Health and Safety Code section 25249.5 et sequitur (Proposition 65 or Act).[1] Both actions related to consumer products CAG's agent purchased online from defendants Walmart Inc. and Wal-Mart.com USA, LLC (collectively, Walmart). Walmart appeals from trial court orders in both actions denying

---

    <sup>*</sup> Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

    [1] All further statutory references are to the Health and Safety Code unless otherwise noted.

its petitions to compel CAG to arbitrate the Proposition 65 claims under the Federal Arbitration Act, title 9 United States Code section 1 et sequitur (FAA), based on an arbitration provision to which consumers must agree as part of the online purchase process.[2]

We affirm. We hold that a plaintiff cannot be compelled to arbitrate a Proposition 65 claim against a seller of consumer products simply because an agent of the plaintiff previously agreed to arbitrate disputes with the seller when purchasing the products online. The plaintiff's agent was not acting on behalf of the state, the real party in interest, when purchasing the products, and thus the agent could not bind the state to arbitration. Accordingly, arbitration was properly denied here on the basis that no agreement to arbitrate the Proposition 65 claims was formed.

## I.
### BACKGROUND

Michael Marcus, CAG's Secretary and Chief Financial Officer, purchased various products from Walmart.com on several occasions between July 2021 and August 2022. There is no dispute that Marcus was acting as a corporate agent for CAG at the time.

To buy the products online, Marcus was required to complete the Walmart.com checkout process. The website provided that by clicking on the "Place order" button, the customer agreed to Walmart's Terms of Use, which were hyperlinked next to the button. The Terms of Use varied slightly at the

---

[2] CAG also sued other defendants connected to the products, including Rokform, LLC (Rokform). Rokform was permitted to join in one of Walmart's petition to compel arbitration and also appeals from the order denying that petition. But as discussed in section II.B. below, Rokform does not challenge the order on any grounds other than those Walmart raises.

relevant times, but each version contained an essentially identical arbitration clause, which we will refer to as the arbitration agreement.

The arbitration agreement provided that "except for disputes that qualify for small claims court, all disputes arising out of or related to these Terms of Use or any aspect of the relationship between [the website user] and Walmart, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, will be resolved through final and binding arbitration." (Some capitalization omitted.) The agreement also provided that the website user and Walmart "are each waiving the right to sue in court" and "agree that any arbitration will take place on an individual basis; class arbitrations and class actions are not permitted." (Capitalization omitted.)

The arbitration agreement further declared that any arbitration will be administered by Judicial Arbitration Mediation Services, Inc. (JAMS) under that organization's rules and procedures, which were hyperlinked. In turn, JAMS rule 8(b) states: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation[,] or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

From January 2022 through February 2023, CAG sent Walmart and various other entities notices of alleged violations of Proposition 65 involving the products at issue. In May 2023, CAG brought case no. 23CV034270 (the first lawsuit) against Walmart and other entities under Proposition 65, alleging that they unlawfully failed to warn that several products they sold, manufactured, or distributed could expose consumers to chemicals known to

3

cause cancer or reproductive toxicity. And in October 2023, CAG brought case no. 23CV047269 (the second lawsuit) against Walmart and other entities, including Rokform, making similar allegations under Proposition 65 about another group of products.[3] Both complaints allege that CAG had the products tested for the chemicals at issue, but neither complaint contains any allegations about Marcus's purchases.

In both cases, Walmart filed a petition to compel arbitration under the FAA, and in doing so it presented evidence that Marcus bought the products from its website. It argued that Marcus agreed to arbitrate disputes by purchasing the products online and that each Proposition 65 lawsuit should therefore be compelled to arbitration. In the second lawsuit, Rokform filed a joinder in Walmart's petition, asserting that it was an intended third-party beneficiary of the arbitration agreement.

The trial court in each case denied Walmart's petition to compel arbitration on the basis that Walmart failed "to prove the existence of an agreement to arbitrate qui tam actions" like those under Proposition 65. Both orders concluded that the arbitration agreement addressed "only . . . the rights of the individual consumer, and nothing in the agreement preclude[d] an action brought by the state." In doing so, the orders also rejected Walmart's argument that the agreement's delegation clause required an arbitrator to resolve whether CAG's claims were arbitrable.

Walmart appealed from the orders in both lawsuits, and Rokform appealed from the order in the second lawsuit. The appeal in the first

---

[3] The products at issue in the first lawsuit are dried seaweed, seaweed snacks, cassava chips, stereo headphones, and crossbody bags. The products at issue in the second lawsuit are dried seamoss, canned sardines, cosmetic bags, suction-cup phone mounts, and tool sets. In particular, Rokform is alleged to be the manufacturer, distributor, promoter, or retailer of the suction-cup phone mounts.

lawsuit was assigned to this division, and the appeals in the second lawsuit were assigned to Division Three. This court originally denied an uncontested motion to consolidate all three appeals, although the two appeals in the second lawsuit were consolidated. But after the appeals became fully briefed, this court reconsidered its prior ruling, transferred the appeals in the second lawsuit to this division, and consolidated them with the appeal in the first lawsuit for purposes of oral argument and decision.

## II.
## DISCUSSION

### A.    *General Legal Standards*

#### 1.    The standard of review

" ' "There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the [trial] court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed." ' " (*Fleming v. Oliphant Financial, LLC* (2023) 88 Cal.App.5th 13, 18.) Here, the parties agree that issues involving the nature of Proposition 65 claims and whether private parties can agree to arbitrate them present questions of law that we independently evaluate.

We review a trial court's result, not its reasoning. (*Goles v. Sawhney* (2016) 5 Cal.App.5th 1014, 1021.) In other words, " ' "a ruling or decision correct in law will not be disturbed on appeal merely because it was given for the wrong reason. If correct upon any theory of law applicable to the case, the judgment will be sustained regardless of the considerations that moved the lower court to its conclusion." ' " (*Ibid.*)

5

## 2. Proposition 65

" 'Proposition 65, which was passed as a ballot initiative in 1986, requires the state to develop and maintain a list of chemicals "known to the state to cause cancer or reproductive toxicity." ' " (*Center for Environmental Health v. Perrigo Co.* (2023) 89 Cal.App.5th 1, 16.)  It provides, with certain exceptions, that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual." (§ 25249.6.)  "[A] person in the public interest" may sue an alleged violator 60 days or more after giving notice to the Attorney General and the local prosecutor and city attorney, but only if none of these authorities have commenced and are "diligently prosecuting" a suit. (§ 25249.7, subd. (d).)

An action under Proposition 65 " 'fundamentally seeks a form of declaratory relief—that the product requires a warning.' [Citation.]  Other remedies include injunctive relief and civil penalties.  (§ 25249.7, subds. (a) & (b).)" (*Center for Environmental Health v. Perrigo*, *supra*, 89 Cal.App.5th at p. 17.)  Seventy-five percent of civil penalties recovered are deposited in the Safe Drinking Water and Toxic Enforcement Fund, and twenty-five percent are paid to the plaintiff, whether the plaintiff is a law enforcement agency or a person acting in the public interest.  (§ 25249.12, subds. (c) & (d).)

Even though Proposition 65 plaintiffs are entitled to 25 percent of civil penalties recovered, they do not have an individual property right at stake. (*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 692.)  "[T]he statutory framework governing a Proposition 65 action affirms the representative nature of the individual[] [plaintiff's] role. An individual may sue under the Act only in the public interest; there is no

6

provision for an individual to sue on [the individual's] own behalf. (§ 25249.7, subd. (d).)" (*ExxonMobil*, at pp. 692–693.)

"An individual must provide the Attorney General [with] any settlement agreement being submitted for court approval, and the Attorney General may participate in court proceedings regarding approval. (§ 25249.7, subd. (f)(5).)" (*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at p. 693.) When the application or construction of Proposition 65 "is at issue in a proceeding in the Supreme Court, court of appeal, or the appellate division of the superior court, each party shall serve a copy of the party's brief or petition and brief . . . on the Attorney General." (§ 25249.7, subd. (o).) The Attorney General has standing to appeal a settlement even without intervening in the action. (See *Consumer Cause, Inc. v. Johnson & Johnson* (2005) 132 Cal.App.4th 1175, 1179, fn. 3.) "Taken together, these provisions reveal a statutory scheme intended to create a mechanism for vindicating public rights." (*ExxonMobil*, at p. 693.)

Because Proposition 65 is meant to vindicate public rights, a Proposition 65 plaintiff does not need to allege a private injury. (*National Paint & Coatings Assn. v. State of California* (1997) 58 Cal.App.4th 753, 757.) Although there are procedural prerequisites for bringing suit, such as providing advance notice to the state and local law enforcement agencies,[4]

---

[4] The notice must include a "certificate of merit," stating that the person or entity considering the lawsuit "has consulted with one or more experts ' "who ha[ve] reviewed facts, studies, or other data regarding the exposure to the listed chemical [that is the subject of the action,] and that, based on that information, the [person or entity] believes there is a reasonable and meritorious case for the private action." ' " (*Physicians Committee for Responsible Medicine v. KFC Corp.* (2014) 224 Cal.App.4th 166, 178–179; § 25249.7, subd. (d)(1).) This certification requirement " 'operates as a brake on improvident citizen enforcement.' " (*KFC Corp.*, at p. 179.)

these prerequisites do not impact standing in the fundamental sense of justiciability. (*Center for Self-Improvement & Community Development v. Lennar Corp.* (2009) 173 Cal.App.4th 1543, 1556.) In short, the Act has no standing requirement, and a plaintiff need not allege or prove damages to maintain an action. (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 184.) Thus, anyone can bring a Proposition 65 lawsuit against the seller of products containing chemicals that may cause cancer or reproductive toxicity without purchasing anything from the seller or suffering any individual harm.

### 3. Enforcement of arbitration agreements

The FAA's "primary substantive provision" is title 9 United States Code section 2. (*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24.) It states, "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) "In enacting [section] 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 10.) This policy of enforceability was intended " 'to overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law.' " (*Cable Connection, Inc. v.*

*DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1343.) The FAA was designed to be enforceable in state as well as federal courts. (*Keating*, at p. 12.)

"A motion to compel arbitration is essentially a request for specific performance of a contractual agreement. [Citation.] The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an arbitration agreement. [Citations.] The party opposing the petition bears the burden of establishing a defense to the agreement's enforcement by a preponderance of the evidence." (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 239 (*Tiri*).)

B.      *Rokform Does Not Properly Raise Its Unique Appellate Claims.*

Before considering the merits of Walmart's appellate claims, we briefly address the scope of Rokform's appellate claims. In addition to joining "all of Walmart's arguments concerning the existence, scope[,] and enforceability" of the arbitration agreement, Rokform claims it was an intended third-party beneficiary of the agreement and CAG waived any argument to the contrary. As it did in seeking joinder below, Rokform argues that it meets the elements for being a third-party beneficiary under *Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, and it points out that CAG did not respond to that argument in the trial court.

We agree with CAG that in so arguing, Rokform misapprehends the nature of an appeal. As an appellant, Rokform has the burden of affirmatively demonstrating error in the challenged ruling. (*Fleming Distribution Co. v. Younan* (2020) 49 Cal.App.5th 73, 84, fn. 8.) But the trial court in the second lawsuit *granted* Rokform's joinder, which was premised on Rokform's purported status as a third-party beneficiary. The court did not explicitly address the third-party beneficiary issue, but that is no basis for concluding that it resolved that issue *against* Rokform. Thus, Rokform fails

9

to show the court erred in respect to that issue, and we need not further consider the claims unique to Rokform.

> C. *The Trial Courts Properly Decided Whether an Agreement to Arbitrate the Proposition 65 Claims at Issue Existed.*

We now turn to Walmart's claims. Initially, Walmart contends that the trial courts lacked jurisdiction to consider the applicability of the arbitration agreement because the agreement provided that JAMS rules and procedures would apply, and JAMS has a rule stating that arbitrability is to be decided by the arbitrator. The contention lacks merit. Even if we assume, without deciding, that Marcus agreed to terms in connection with his online purchases that sufficiently delegated arbitrability questions to the arbitrator, CAG raised a threshold issue that must be decided by a court: whether an arbitration agreement was actually entered into by the relevant parties.

"Parties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court, questions regarding the enforceability of the agreement. [Citation.] They 'can agree to arbitrate almost any dispute— even a dispute over whether the underlying dispute is subject to arbitration.' " (*Tiri, supra,* 226 Cal.App.4th at p. 241.) A delegation to the arbitrator is enforceable so long as it is clear and unmistakable. (*Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 70, fn. 1 (*Rent-A-Center*).)

When, unlike in this case, parties do not contest the existence of an arbitration agreement, challenges to the enforceability of arbitration agreements that have clear delegation clauses are to be decided by the arbitrator, not the court. (*Rent-A-Center*, *supra*, 561 U.S. at pp. 71–73; see *Tiri, supra*, 226 Cal.App.4th at p. 236.) This remains true even if the arguments favoring the agreement's enforceability are "wholly groundless." (*Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) 586 U.S. 63, 68

10

[arbitrator must decide in the first instance if claim for injunctive relief was arbitrable even though arbitration agreement excluded such claims].)

But when the existence of an agreement to arbitrate between the relevant parties is disputed, the issue must be decided by a court, not an arbitrator.  This is because the delegation of " 'gateway' questions of 'arbitrability' " to the arbitrator "presupposes the existence of an agreement between the parties, which the court necessarily ha[s] to decide before it [can] enforce any such delegation."  (*Garcia v. Stoneledge Furniture LLC* (2024) 102 Cal.App.5th 41, 50; *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 774; see *Rent-A-Center*, *supra*, 561 U.S. at p. 70, fn. 2.) "[I]t is a cardinal principle that arbitration under the FAA 'is a matter of consent, not coercion,' " meaning " ' "a party cannot be required to submit to arbitration any dispute which [the party] has not agreed so to submit." ' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

Here, Walmart's petitions to compel arbitration were denied on the basis that any agreement Marcus may have entered in connection with his online purchases did not preclude an action brought by the state, since he was not acting as the state's agent at the time of the purchases.  Thus, even if there was an arbitration agreement between Walmart and CAG, no such agreement existed between Walmart and the state, the real party in interest. Because the issue was whether any agreement to arbitrate existed between the relevant parties in this Proposition 65 dispute, the trial courts properly considered it in the first instance.

D. *The Petitions to Compel Arbitration Were Properly Denied Because No Arbitration Agreement Existed Between Walmart and the State.*

Walmart argues that the trial courts improperly determined that the arbitration agreement between it and CAG did not encompass the Proposition 65 claims at issue. We disagree. Even if we again assume, without deciding, that Marcus agreed to Walmart's arbitration terms when he purchased the relevant products online, any such agreement did not bind the state, the real party in interest, under *Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 655 (*Bautista*). Although *Bautista* was decided in a suit under the Labor Code Private Attorneys General Act of 2004, Labor Code section 2698 et sequitur (PAGA), its analysis applies in this Proposition 65 suit.

We begin by reviewing the relevant aspects of PAGA suits and how they compare to those under Proposition 65. "PAGA authorizes any 'aggrieved employee' to initiate a civil action against a former employer 'on behalf of [the employee] and other current or former employees' to recover civil penalties for violations of the Labor Code ordinarily 'assessed and collected by the Labor and Workforce Development Agency.' " (*Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 79.) A plaintiff who brings a PAGA suit can assert both individual and representative claims. "An individual PAGA claim . . . seeks civil penalties based on Labor Code violations sustained by the plaintiff. [Citations.] A [representative] PAGA claim is the component of a PAGA claim that seeks civil penalties based on Labor Code violations sustained by current and former employees other than the plaintiff." (*Rodriguez v. Packers Sanitation Services Ltd., LLC* (2025) 109 Cal.App.5th 69, 75, review granted May 14, 2025, S290182.) To bring either type of PAGA claim, a plaintiff must have standing, meaning the

plaintiff must be an "aggrieved employee" who was employed by the alleged violator and who was harmed by one or more of the alleged violations. (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83–84 (*Kim*).)

The distinction between individual and representative PAGA claims was crystallized in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*). Before *Viking River*, some California decisions, including two on which we rely, referred to all PAGA claims—both individual and representative—as "representative" in the sense that "they are brought by employees acting as representatives . . . of the [s]tate." (*Viking River*, at p. 648; *Kim*, *supra*, 9 Cal.5th at pp. 81, 86; *Bautista*, *supra*, 52 Cal.App.5th at pp. 656–657.) But, as we discuss further below, *Viking River* clarified that individual PAGA claims cannot accurately be characterized as belonging to the state. Thus, our reliance on *Kim* and *Bautista* is confined to what they have to say about non-individual PAGA claims.

With this understanding in mind, we turn to discuss these decisions' holdings regarding the nature of PAGA representative claims. "An employee suing under PAGA 'does so as the proxy or agent of the state's labor law enforcement agencies.' [Citation.] Every PAGA claim is 'a dispute between the employer and the *state*.' [Citations.] Moreover, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. [Citation.] Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action. . . . The 'government entity on whose behalf the plaintiff files suit is always the real party in interest.' " (*Kim*, *supra*, 9 Cal.5th at p. 81, some italics omitted.) Thus, representative PAGA claims, like Proposition 65 cases, are brought on behalf of the state. (See *Bautista*, *supra*, 52 Cal.App.5th at p. 657.)

13

Both are also qui tam actions.  The traditional requirements for a qui tam action are "(1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring suit to recover the penalty." (*Sanders v. Pacific Gas & Elec. Co.* (1975) 53 Cal.App.3d 661, 671.)  Proposition 65 is "not meaningfully distinguishable from comparable qui tam statutes," including PAGA. (*California Business & Industrial Alliance v. Becerra* (2022) 80 Cal.App.5th 734, 739.)

California appellate decisions have consistently "concluded that arbitration agreements entered into before a plaintiff has been deputized for purposes of a PAGA representative action [are] not enforceable for purposes of the PAGA representative action." (*Bautista*, *supra*, 52 Cal.App.5th at p. 655 [collecting cases].)  As *Bautista* explained, because the state is the real party in interest, " 'an arbitration agreement executed before an employee meets the statutory requirements for commencing a PAGA action does not encompass that action.  Prior to satisfying those requirements, an employee enters into the agreement as an individual, rather than as an agent or representative of the state.' " (*Id.* at p. 657, italics omitted.)

This analysis is even more forceful in the context of a Proposition 65 suit, because Proposition 65 does not require that the plaintiff suffered any injury and includes no individual claims, only claims brought on behalf of the general public.[5]  An online purchaser of consumer products who enters into

---

[5] At oral argument, Walmart's counsel urged that CAG's Proposition 65 claim is more akin to an individual PAGA claim than a representative one, since CAG's agent bought the products at issue.  We disagree with the analogy and the premise counsel asserted in making it:  that a plaintiff must buy a product to have standing to sue under Proposition 65.  As we have stated, unlike a PAGA plaintiff, who must have experienced a Labor Code

an arbitration agreement in connection with the purchase before notifying the government agencies of the intent to bring a suit and filing the suit, as was the case here, cannot be deemed to have done so as an agent for the state. While any such agreement may bind the purchaser to arbitrate disputes regarding the purchases, it cannot bind the state to the arbitration of a later Proposition 65 lawsuit. In short, extending *Bautista*'s reasoning (as it applies to PAGA representative claims) to Proposition 65 claims, we conclude that while Walmart and CAG may have entered into an arbitration agreement, Walmart and the real party in interest, the state, did not.

Walmart does not identify any theory supporting the notion that the nonsignatory state was bound by an arbitration agreement that Marcus may have entered into when he purchased the products online. (See *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513 [listing theories under which "nonsignatory may be bound to arbitrate"].) Instead, Walmart claims that *Bautista* "is no longer good law" after *Viking River*, which Walmart characterizes as "confirm[ing] that claims belonging to sovereigns are subject to the FAA." We disagree with Walmart's reading of this case law. While *Viking River* confirmed that claims belonging to the state may be subject to the FAA, it said nothing whatsoever to suggest that states are bound to contractual terms to which they never agreed, which is the relevant issue here.

*Viking River* considered whether the FAA preempted "a rule of California law that invalidates contractual waivers of the right to assert representative claims under [PAGA]." (*Viking River, supra,* 596 U.S. at p. 643.) The arbitration agreement at issue, between the plaintiff and her

---

violation to have standing to bring even a representative claim, a Proposition 65 plaintiff need not allege any individual injury at all.

former employer, "contained a 'Class Action Waiver' providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action. It also contained a severability clause specifying that if the waiver was found invalid, any class, collective, representative, or PAGA action would presumptively be litigated in court. But under that severability clause, if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.' " (*Id.* at p. 647.) Applying *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), the California Court of Appeal held both "that categorical waivers of PAGA standing are contrary to state policy and that PAGA claims cannot be split into arbitrable individual claims and nonarbitrable 'representative' claims." (*Viking River*, at p. 648.)

*Viking River* did not disturb "*Iskanian*'s principal rule prohibit[ing] waivers of . . . representative standing to bring PAGA claims in a judicial or arbitral forum," but it concluded that *Iskanian*'s "secondary rule . . . invalidat[ing] agreements to separately arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee [personally] suffered' " was preempted. (*Viking River*, *supra*, 596 U.S. at pp. 649, 656–659, italics omitted.) This latter rule requiring joinder of individual and representative PAGA claims coerced parties into either arbitrating claims they never agreed to arbitrate or "forgo[ing] arbitration altogether," violating the FAA's "fundamental principle that 'arbitration is a matter of consent.' "[6] (*Viking River*, at pp. 659–661.)

---

[6] *Viking River* went on to suggest that once an individual PAGA claim was sent to arbitration, the plaintiff would lack standing under California law to bring representative PAGA claims in court. (*Viking River*, *supra*, 596 U.S. at p. 663.) This suggestion was subsequently deemed incorrect by our state Supreme Court. (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1114.)

16

Footnote four of *Viking River* addressed *Iskanian*'s additional conclusion "that a PAGA action lies outside the FAA's coverage entirely because [title 9 United States Code section] 2 is limited to controversies *'arising out of'* the contract between the parties, [citation], and a PAGA action 'is not a dispute between an employer and an employee arising out of their contractual relationship,' but 'a dispute between an employer and the *state*.'" (*Viking River*, *supra*, 596 U.S. at p. 652, fn. 4, quoting *Iskanian*, *supra*, 59 Cal.4th at p. 387.) In rejecting this conclusion, *Viking River* explained, "Although the terms of [title 9 United States Code section] 2 limit the FAA's enforcement mandate to agreements to arbitrate controversies that 'arise out of' the parties' contractual relationship, disputes resolved in PAGA actions satisfy this requirement. The contractual relationship between the parties is a but-for cause of any justiciable legal controversy between the parties under PAGA, and 'arising out of' language normally refers to a causal relationship. [Citation.] And regardless of whether a PAGA action is in some sense also a dispute between an employer and the state, nothing in the FAA categorically exempts claims belonging to sovereigns from the scope of [title 9 United States Code section] 2." (*Viking River*, at p. 652, fn. 4.)

According to Walmart, footnote four thereby "squarely rejected" the proposition that the state is the real party in interest in a PAGA action, meaning that "an arbitration agreement to which the [s]tate is not a party cannot compel the arbitration of a PAGA claim." But the footnote did no such thing. It simply established that the FAA applies to PAGA claims because those claims "arise out of" a plaintiff's employment contract, even if those claims in some sense belong to the state.[7] That the FAA applies to an

---

[7] We need not decide whether the trial courts here correctly concluded, based on *Iskanian*, that Proposition 65 claims "fall outside the FAA's coverage." We have assumed the FAA applies to the agreement at issue, but

arbitration agreement does not answer whether that agreement binds a nonsignatory party, an issue that *Viking River* simply did not address. (See *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 511 [decisions not authority for propositions not considered].) In turn, *Bautista*'s holding that a plaintiff cannot bind the state to arbitrate PAGA claims arising after the agreement was entered did not rest on any conclusion about the reach of the FAA, a law *Bautista* did not even mention.

Nor did any other portion of *Viking River* reject the proposition that the state is the real party in interest to whom a *representative* PAGA claim belongs. To be sure, *Viking River*'s holding that plaintiffs may be compelled to arbitrate their individual PAGA claims cannot be reconciled with prior law holding that *no* PAGA claim could be arbitrated without the state's consent. (See *Barrera v. Apple American Group LLC, supra,* 95 Cal.App.5th at p. 80.) But *Viking River* did not rule on the arbitrability of representative PAGA claims at all. We therefore fail to perceive how *Viking River* affected *Bautista*'s reasoning about the ability of individual plaintiffs to bind the state to arbitrate *its* claims.

In summary, the challenged orders properly concluded that arbitration of CAG's Proposition 65 claims could not be compelled on the basis of an agreement CAG's agent entered in purchasing the products at issue. To reach this conclusion, we need not and do not hold that Proposition 65 claims are categorically exempt from arbitration under the FAA or that the arbitration agreement is unenforceable against Marcus and CAG as to other claims they may individually possess. We hold only that Proposition 65

---

it is hardly clear that a Proposition 65 claim would "arise out of" an arbitration agreement a plaintiff entered into when purchasing a product, given that the plaintiff need not have purchased any product or suffered any injury to bring the claim.

claims belonging to the state, the real party in interest, cannot be compelled to arbitration on the basis of an agreement the state did not enter.

## III.
### DISPOSITION

The trial court orders denying Walmart's petitions to compel arbitration are affirmed. CAG is awarded its costs on appeal.

19

_____

Humes, P.J.


WE CONCUR:



_____

Banke, J.




_____

Langhorne Wilson, J.




*Consumer Advocacy Group, Inc. v. Walmart Inc.* A169022, A169800, A169871


20

Trial Court:

Alameda County Superior Court


Trial Judge:

Hon. Tara M. Desautels; Hon. Karin Schwartz


Counsel:

Alston & Bird LLP, Rachel E. K. Lowe, Jesse Steinbach, Gregory S. Berlin, Jason Levin for Defendants and Appellants Walmart Inc. and Wal-Mart.com USA, LLC; Tucker Ellis LLP, Matthew I. Kaplan for Defendant and Appellant Rokform, LLC


Yeroushalmi & Yeroushalmi, Reuben Yeroushalmi for Plaintiff and Respondent


*Consumer Advocacy Group, Inc. v. Walmart Inc.* A169022, A169800, A169871